826 P.2d 1179

**HATCH COMPANIES CONTRACTING, INC., Plaintiff, Counter-defendant-Appellant,**

v.

**The ARIZONA BANK, Defendant, Counter-claimant-Appellee.**

**1 CA–CV 89–623.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 24, 1991.

Review Denied April 7, 1992.

**554**

Kennedy, Wilson & Lerch by Lee Allen Johnson, Phoenix, for appellant.

Ryley, Carlock & Applewhite by Brenda Moody Whinery and Guy D. Kidd, Phoenix, for appellee.

## OPINION

VOSS, Presiding Judge.

Hatch Companies Contracting, Inc. (Hatch) appeals from a summary judgment for The Arizona Bank, the predecessor in interest to appellee Security Pacific Bank of Arizona (Bank), awarding it statutory damages of $5,000 pursuant to A.R.S. § 33–420 and costs and attorney's fees of $3,500 for Hatch's wrongful filing of a lis pendens. Hatch raises three issues on appeal:

1. Did the bank lack standing to question the validity of the lis pendens and to recover damages and fees under A.R.S. § 33–420(A)?

2. Where a bond has been filed to discharge a mechanics' lien pursuant to A.R.S. § 33–1004, which provides

that the bond "shall be conditioned for the payment of the judgment which would have been rendered against the property for the enforcement of the lien," is the action to recover on the bond one "affecting title to real property" so that it is proper for the party who had filed the lien to record a lis pendens?

3. Even if the lis pendens was wrongfully filed, did the trial court err in awarding judgment against Hatch because it did not "know or have reason to know" that the lis pendens was groundless?

## FACTS AND PROCEDURAL HISTORY

The facts in this case are undisputed. Hatch was a subcontractor who performed construction on property owned by Fred C. and Connie Moore. When the general contractor for the project refused to pay Hatch the amount Hatch claimed it was due, Hatch filed a notice and claim of mechanics' lien against the real property. Hatch subsequently filed suit for breach of contract and to foreclose its lien against the property. Hatch served all parties who had any interest of record in the property including the Bank, which had recorded a deed of trust encumbering the property for payment of a loan the Bank had made to the property owners.

Before Hatch filed its complaint, the contractor obtained and properly recorded a lien discharge bond, to discharge the lien against the property pursuant to A.R.S. § 33–1004(A). Hatch had been served with a copy of the bond and, as required by A.R.S. § 33–1004(C) and (E), Hatch included the surety as a defendant to the lawsuit and requested judgment on the bond against the contractor and its surety for satisfaction of any judgment of foreclosure it obtained. After being served with a copy of the lien discharge bond, Hatch filed a lis pendens which stated that an action was pending to foreclose its mechanics' lien.

When the Bank filed its answer to Hatch's complaint, it counterclaimed alleging that Hatch's filing of the lis pendens,

after it knew that the lien discharge bond had been filed, was improper and entitled it to damages and attorney's fees under A.R.S. § 33–420(A). The Bank obtained summary judgment on its counterclaim and was awarded statutory damages of $5,000 and attorney's fees of $3,500 for the filing of a groundless document. The trial court found: (1) the Bank had standing to bring suit under A.R.S. § 33–420; (2) the provisions of A.R.S. § 33–1004, requiring a lawsuit to perfect a claim on the lien discharge bond, do not require or authorize the recording of a lis pendens, and (3) as a matter of law, the real property is not subject to foreclosure of Hatch's mechanics' lien.

## STANDING

We first address the issue of the Bank's standing. A.R.S. § 33–420 provides that relief may be claimed by "the owner or beneficial title holder" of the real property against which the wrongful document is filed. Since these are the only parties entitled to relief under the statute, the judgment would have to be reversed unless the record demonstrates that the Bank was either an owner or a beneficial title holder of the property.

Hatch argues that the Bank lacks standing because it is neither the owner nor the beneficial title holder of the property. Citing *Richey v. Western Pacific Development Corp.*, 140 Ariz. 597, 684 P.2d 169 (App.1984), Hatch maintains that the beneficial title holder is the one whom documents of record show to be the beneficial owner of the property. Thus, Hatch continues, where a trust company holds record title for the benefit of one whose interest also appears of record, the former is the owner and the latter is the beneficial title holder. Since the Bank does not hold record title for the benefit of one whose interest also appears of record, and the Moores do not hold title for any beneficiaries, Hatch concludes that there is no beneficial title holder.

The Bank contends that it does have standing as the beneficial title holder because it is the beneficiary under a deed of trust. The Bank contends that since it is

the beneficiary under a deed of trust, pursuant to A.R.S. § 33–806(B), it has the right to maintain an action against any person or entity where damages or injury occurs or may occur to the trust property or interest therein.

We conclude that the Bank was the beneficial title holder with standing under A.R.S. § 33–420. The record demonstrates that the Bank is a beneficiary under a deed of trust on the subject property given by the Moores to secure a sizeable loan made to them by the Bank. While deeds of trust are given to secure debts, our statutes governing deeds of trust provide that a deed of trust "conveys" the trust property to a trustee who holds the property for the benefit of the beneficiary designated in the deed of trust. *See* A.R.S. § 33–801(1), (5) and (8). The deed of trust employed in this case expressly provides that the trustor "conveys, transfers, and assigns" the property to the trustee and names the Bank as the beneficiary under the deed of trust.

It appears that in using the phrase "owner or beneficial title holder" in A.R.S. § 33–420, the legislature sought to encompass all persons or entities holding legal or beneficial title to property. Division Two of this court agreed with that assessment in *Richey*:

> They [appellants] assert that the word 'owner' has some meaning in the statute other than 'beneficial title holder' and in the context of the statute, 'owner' means 'record title holder.' They also contend that 'title' as used in 'beneficial title holder' is significant in that it differentiates between beneficiaries who actually appear on the title and those who do not. Thus, they conclude, Pioneer Trust Company held record title and was 'owner' and Western Pacific, the beneficiary appearing on the title at the time the lis pendens was filed, is the only one entitled to recover, if recovery is allowed. We agree.

*Id.*, 140 Ariz. at 601, 684 P.2d at 173. There is nothing in *Richey* to indicate that the beneficiary under a deed of trust in effect when the lis pendens is filed does not come within the phrase, "beneficial title holder."

■ Although *Richey* does contain language indicating that the beneficiary must appear on the title, we do not believe the language requires that the beneficiary appear on the actual deed. Such an interpretation would mean the beneficiary could only recover under the statute in the situation where there was an express trust in which the deed would be in the trustee's name. That would be untenable as most beneficiaries would lack standing to contest the wrongful filing of a lis pendens in circumstances where there may be damage to trust property or an interest therein. We are satisfied that a beneficiary of a deed of trust is a beneficial title holder for the property conveyed within the meaning of the statute.

## PROPRIETY OF FILING LIS PENDENS

Next, we consider the question whether a lis pendens filed after a lien discharge bond has been recorded pursuant to A.R.S. § 33–1004 is a groundless document proscribed by A.R.S. § 33–420.

■ A.R.S. § 12–1191(A) authorizes the filing of a lis pendens where an action is involved "affecting title to real property." A lis pendens serves two purposes. It provides notice to anyone interested in a piece of real property of pending litigation involving the property and also prevents third persons from acquiring interests in the property during the pendency of the litigation that would prevent the court from granting suitable and effective relief. *Tucson Estates, Inc. v. Superior Court,* 151 Ariz. 600, 604, 729 P.2d 954, 958 (App. 1986).

At common law, the recording of a lis pendens was absolutely privileged. *Kelly v. Perry*, 111 Ariz. 382, 384, 531 P.2d 139, 141 (1975) (citing *Stewart v. Fahey*, 14 Ariz.App. 149, 481 P.2d 519 (1971)). The Arizona legislature changed this common law rule when it enacted A.R.S. § 33–420, proscribing the filing of any document against real property which is "forged, groundless, contains immaterial misstatement or false claims or is otherwise inval-

id." The Arizona courts have held repeatedly that if a lis pendens is filed with respect to an action that does not affect title to real property, the lis pendens is a groundless document within the proscription of A.R.S. § 33–420. *Coventry Homes, Inc. v. Scottscom Partnership,* 155 Ariz. 215, 217, 745 P.2d 962, 964 (App.1987); *Richey,* 140 Ariz. at 601, 684 P.2d at 173. As Division Two noted in *Richey,* were this not the rule, groundless lis pendens could be filed with impunity in actions where title to property is not actually affected, such as simple money judgment actions. *Id.*

■ There is no question that if Hatch's mechanics' lien had not been discharged, and Hatch had sought to foreclose its lien, the foreclosure action would have been one affecting title to real property and the filing of a lis pendens would have been appropriate. In fact, in *Scottsdale Memorial Health Systems, Inc. v. Clark,* 157 Ariz. 461, 759 P.2d 607 (1988), in which a mechanics' lien claimant foreclosed his lien on the property and obtained a judgment, but had failed to file a lis pendens, he was unable to satisfy the judgment out of a sale of the property because the property had been purchased during the pendency of the litigation by a third person who had taken without notice of the litigation. This case demonstrates the importance of filing a lis pendens where a mechanics' lien is being foreclosed.

It is equally clear to us, however, that where a discharge of lien bond is filed pursuant to A.R.S. § 33–1004, any action which proceeds, thereafter, to obtain a judgment is transformed into one which does not affect title to real property. Pursuant to that statute, real property encumbered with a mechanics' lien may be cleared of the lien through the substitution of a surety bond executed for the protection of the claimant who perfected the lien. Subsection (A) of the statute authorizes the bond to be obtained by a contractor, subcontractor, or any person with a legal or equitable interest in the real property which is subject to the lien. This subsection expressly provides that "[u]pon the recordation of such bond, the property

shall be discharged of such lien." Subsection (B) of the statute provides that the bond shall be in an amount equal to one and one-half times the claim secured by the lien and "shall be conditioned for the payment of the judgment which would have been rendered against the property for the enforcement of the lien." Although subsection (B) requires the lien claimant to prove many of the same items it would have had to in foreclosing its lien against the property, subsection (E) makes it clear that any judgment entered thereafter shall be against the principal and surety on the bond and "shall not be against the property."

The obvious policy of the lien discharge statute is to give property owners the ability to free their property from liens. A lien claimant would defeat the purpose of the lien discharge statute if it were allowed to file a lis pendens, which clouds title to the property, after a lien discharge bond has been recorded in order to free the property from a mechanics' lien. Since the statute expressly states that any judgment entered after the recording of a lien discharge bond shall not be against the property, the action is not one "affecting title to property" and therefore a lis pendens filed in this situation would be groundless and proscribed by A.R.S. § 33–420.

Hatch argues that the holding in *Scottsdale Memorial* requires the filing of a lis pendens. It points out that A.R.S. § 33–1004(B) provides that even where a lien discharge bond has been recorded, the lien claimant cannot recover on the bond without demonstrating that it would have been entitled to a judgment against the property for the enforcement of its lien. Hatch argues that *Scottsdale Memorial* demonstrates that if real property is conveyed to a third party who had no notice of the litigation because no lis pendens had been filed, the lien claimant would not be able to demonstrate that he would have been entitled to a judgment against the property.

■ We disagree. *Scottsdale Memorial* demonstrated only that the lien claimant was not entitled to "satisfy" his judgment through sale of the property. In that case

the lien claimant did obtain a foreclosure judgment against the property. The fact that the property had been sold to a third party who had no knowledge of the pending litigation prevented judgment from being "satisfied" but not from being "entered." A.R.S. § 33–1004 merely requires the lien claimant whose lien was discharged to prove that it would have been entitled to judgment against the property, not that it could have satisfied the judgment through foreclosure sale of the property. Nothing in *Scottsdale Memorial* entitles a lien claimant to file a lis pendens where a discharge of lien bond has been filed.

Hatch also argues that this action was one involving a determination of rights incident to ownership and therefore that the filing of the lis pendens was proper. It points out that in *Tucson Estates*, the court construed the lis pendens statute to allow filing of a lis pendens in any action "involving an adjudication of rights incident to title to real property."

We find *Tucson Estates* to be inapposite. In that case the plaintiff sought a declaratory judgment proclaiming the existence of an implied restricted covenant on real property. Any person subsequently acquiring title to the real property would have been bound by a restrictive covenant established in the lawsuit. The court determined that the restrictive covenant on the property would be a right incident to title and therefore that the filing of a lis pendens was appropriate. *Tucson Estates*, 151 Ariz. at 605, 729 P.2d at 959.

In the instant case, no adjudication of rights incident to title to real property is being made. The only connection the litigation has with rights in real property is that the party who perfected the lien which was discharged must show that it would have been entitled to a judgment against the property for the enforcement of the lien if the lien had not been discharged. This cannot be considered as an example of a case in which an adjudication of rights incident to title to real property is being made such as was referred to by the court in *Tucson Estates*.

Finally, we consider and reject Hatch's argument that the language of A.R.S. § 33–1004, in contrast to language used in lien discharge statutes from other jurisdictions, demonstrates that the action which proceeds is a foreclosure against the real property rather than a suit merely to establish the validity of the lien. We are not persuaded by Hatch's criticism of the language of the Arizona statute. The statute clearly provides that the action which proceeds after the filing of the lien discharge bond is not a foreclosure against the real property. No judgment against the property is rendered. It is necessary to demonstrate merely that a judgment "would have been rendered" against the property for the enforcement of the lien had the lien not been discharged.

Here a lien release bond was filed. The filing of the bond discharged the lien and the proceeding which followed thereafter cannot be said to be one "affecting title to real property." The trial court correctly concluded that the lis pendens Hatch filed was a groundless document proscribed by A.R.S. § 33–420.

## KNOWLEDGE

■ Finally, we consider Hatch's argument that we reverse the trial court on the ground that the element of knowledge required by A.R.S. § 33–420(A) is lacking in this case. Hatch argues that since the lis pendens was executed and recorded by its counsel, it is counsel's knowledge and state of mind which are at issue. Hatch then argues that counsel neither "knew nor had reason to know" that the lis pendens was groundless.

In reviewing the record, we note that Hatch failed to present any argument in the trial court that the requisite knowledge was missing. Hatch did, however, allude to the issue of knowledge in its memorandum in opposition to defendant counterclaimants' motion for partial summary judgment. We also note that the bank addressed the argument of knowledge in its brief without arguing that the issue was not fully presented below. Therefore, we

address the issue of Hatch's knowledge here.

We find that Hatch possessed the requisite knowledge. Recently, the Arizona Supreme Court in *Wyatt v. Wehmueller*, 167 Ariz. 281, 806 P.2d 870 (1991), held that damages may not be assessed against a client pursuant to A.R.S. § 33–420(A) if an attorney files a lis pendens without the client's knowledge or consent.

This action, however, is distinguishable from *Wyatt*. The record here reveals that Hatch was made aware that its counsel had filed the lis pendens. On December 20, 1988, two and one-half months before the Bank filed its motion for summary judgment, Hatch's attorney sent a letter to the Bank's attorney discussing the lis pendens. The letter reveals that a copy was sent to Hatch's president.

Because any knowledge on the part of counsel would be imputed to Hatch under these circumstances, it would then be necessary to determine whether counsel had the requisite knowledge. Even assuming that the attorney had a good-faith belief in the propriety of recording the lis pendens, we believe Hatch has failed to prove the attorney did not have "reason to know" the filing was improper. In determining what "reason to know" means under this statute, this court follows the *Restatement (Second) of Torts* § 12(1), (1965). It provides in comment (a):

> 'Reason to know' means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist.

*See Coventry Homes*, 155 Ariz. at 219, 745 P.2d at 966 (quoting § 12(1) and comments).

Hatch argues that its counsel had no "reason to know" it should not file a lis pendens because no opinion had been issued holding that a lis pendens should not be filed after a lien discharge bond pursuant to A.R.S. § 33–1004 has been filed. This argument is without merit because an opinion on this precise issue was not required to give counsel "reason to know." Existing case law clearly held that a lis pendens filed in an action which did not affect the title to real property was improper pursuant to A.R.S. § 33–420. Under no reasonable interpretation of the language of A.R.S. § 33–1004 would the conclusion be reached that an action to recover on a lien discharge bond filed pursuant to that statute could be considered an action affecting title to real property. No reasonable reading of *Scottsdale Memorial* or *Tucson Estates* would have led to any different conclusion.

In *Evergreen West, Inc. v. Boyd*, 167 Ariz. 614, 810 P.2d 612 (App.1991), Division Two of this court recently held that a plaintiff is not prohibited from recording a lis pendens merely because he may lose on the merits of his action. The court indicated that a lis pendens is groundless under A.R.S. § 33–420 only where the claim that the underlying action is one affecting title to real property has no arguable basis or is not supported by any credible evidence. For the reasons previously stated, we believe that an arguable basis was lacking in this case.

## ATTORNEY'S FEES ON APPEAL

The Bank requests attorney's fees on appeal which we grant pursuant to A.R.S. § 33–420(A). The amount will be determined after the Bank's filing of the affidavit required by Rule 21(c), Arizona Rules of Civil Procedure.

## CONCLUSION

For the reasons explained in this opinion, we affirm the trial court's award of judgment to the Bank pursuant to A.R.S. § 33–420(A).

McGREGOR and EUBANK, JJ., concur.