199 P.3d 646

**SANTA FE RIDGE HOMEOWNERS' ASSOCIATION, an Arizona non-profit corporation, Plaintiff/Counter–Defendant/Appellant,**

v.

**Carla BARTSCHI, an unmarried woman, Defendant/Counter–Claimant/Appellee.**

No. 1 CA–CV 07–0792.

Court of Appeals of Arizona, Division 1, Department D.

July 29, 2008.

Review Denied Jan. 6, 2009.

Ekmark & Ekmark, L.L.C. by Curtis S. Ekmark, Penny L. Koepke, Quentin T. Phillips, Scottsdale, Attorneys for Plaintiff/Counter–Defendant/Appellant.

John Friedeman, PC, Phoenix, Attorney for Defendant/Counter–Claimant/Appellee.

## OPINION

TIMMER, Judge.

¶ 1 We are asked to decide whether a lawsuit filed by a homeowners' association to compel a homeowner's compliance with deed restrictions regarding property maintenance affects title to real property, thereby authorizing the association to record a notice of lis pendens against the homeowner's property pursuant to Arizona Revised Statutes ("A.R.S.") section 12–1191(A) (Supp.2007). For the reasons that follow, we decide that such a lawsuit does not affect title to real property, and thus § 12–1191(A) did not authorize appellant Santa Fe Ridge Homeowners' Association ("Santa Fe") to record a notice of lis pendens against property owned by appellee Carla Bartschi. Therefore, the trial court correctly entered partial summary judgment for Bartschi on her counterclaim against Santa Fe for wrongful recordation of a lis pendens pursuant to A.R.S. § 33–420(A) (2007). Because the record does not reflect that Bartschi was entitled to an award of all attorneys' fees claimed pursuant to § 33–420(A), however, we vacate that portion of the judgment and remand for a recalculation of the fee award.

## BACKGROUND[1]

¶ 2 Bartschi owns a home within the planned community of Santa Fe Ridge in Glendale, Arizona. The owners of property within Santa Fe Ridge are subject to a Declaration of Covenants, Conditions and Restrictions ("CC & Rs"). On November 9, 2006, Santa Fe filed a complaint against Bartschi alleging breach of contract and seeking permanent injunctive relief for violations of the CC & Rs. Specifically, Santa Fe alleged that Bartschi had failed to maintain the landscaping on her property, failed to remove trash/debris from her front yard, and failed to remove a large crate from her lot. Santa Fe sought injunctive relief requiring Bartschi to remedy the violations by a certain date. Additionally, Santa Fe asked that in the event Bartschi failed to comply with any injunction order, it be allowed to enter her property, remedy the violations, and recover any expenses. If Bartschi failed to pay these expenses, Santa Fe requested that the amounts owing serve as a lien against her property.

¶ 3 On November 13, Santa Fe recorded a notice of lis pendens against Bartschi's property pursuant to A.R.S. § 12–1191(A). On December 22, Bartschi filed an answer denying Santa Fe was entitled to relief under its complaint. She additionally filed a counterclaim for wrongful recordation of the lis pendens and sought statutory damages, attorneys' fees, and costs pursuant to A.R.S. § 33–420(A).

¶ 4 On March 30, 2007, Bartschi filed a motion for partial summary judgment ("MPSJ") on her counterclaim, arguing the lis pendens was invalid because Santa Fe's lawsuit was not an action "affecting title to real property," as required by § 12–1191(A). Santa Fe responded in opposition, and the court held a hearing on July 9. At the com-

---

1. We view the facts and inferences in the light most favorable to Santa Fe as the party against which partial summary judgment was entered.

*Orme Sch. v. Reeves*, 166 Ariz. 301, 309–10, 802 P.2d 1000, 1008–09 (1990).

mencement of the hearing, recognizing that the parties would likely incur significant attorneys' fees if the lawsuit progressed, the court broached the issue of settlement and a de facto settlement conference ensued. At the conclusion of the hearing, after Bartschi had indicated her willingness to correct the outstanding maintenance issues, the court scheduled a status hearing for the following week to determine the sufficiency of Bartschi's efforts. Significantly, for purposes of this appeal, the court denied the MPSJ stating, "I think the lis pendens is appropriate.... [The] lis pendens can be removed once [Bartschi] complies with those things that we have just put on the record today."

¶ 5 The court conducted the follow-up status conference on July 13. After discussing Bartschi's efforts to correct the outstanding maintenance issues, the court reconsidered its ruling on the MPSJ:

> I am ordering and granting Summary Judgment on behalf of [Bartschi] with respect to the lis pendens because a lis pendens can only be brought if there's some effect to the title of the property. You have other remedies. You have self-help remedy and you do not yet have a lien on the property.
>
> So there's no legal basis for a lis pendens. So I'm granting the Summary Judgment and ordering the lis pendens be removed no later than 10:00 o'clock a.m. Monday, July 16th.

The court then set the matter for another status conference on July 24.

¶ 6 On July 23, Bartschi filed a motion for statutory damages, attorneys' fees, and costs pursuant to A.R.S. § 33–420(A). *See Richey v. W. Pac. Dev. Corp.*, 140 Ariz. 597, 601, 684 P.2d 169, 173 (App.1984) (concluding § 33–420 applies to groundless recording of lis pendens). The court held the status conference the next day and indicated its inclination to grant Bartschi's motion. In response to Santa Fe's argument that the lis pendens affected title to Bartschi's property because prospective purchasers must understand that an outstanding issue exists concerning the property's compliance with the CC & Rs, the court disagreed, responding as follows:

> Let me tell you why you're not correct. The reason you're not correct is because you never got a judgment. You never got a lien. Had you gotten a judgment or a lien, then it would have been proper to file lis pendens. But you didn't do that.
>
> You filed the lis pendens just based on your request for an injunction which was not granted. So it was a premature lis pendens. And it was improper pursuant to 33–420.... You did not have any interest that would [a]ffect the title in this property.

The court subsequently granted Bartschi's request for statutory damages in the amount of $5,000 and her request for attorneys' fees and costs, subject to her submission of supporting documentation.

¶ 7 On September 12, the court dismissed the complaint because Bartschi was not then in violation of the CC & Rs, and therefore Santa Fe was not entitled to relief. The court also signed a judgment granting Bartschi's MPSJ and awarding her $5,000 in statutory damages, $11,110 in attorneys' fees, and $422.20 in costs. This timely appeal followed.

## DISCUSSION

### I. Propriety of lis pendens

¶ 8 Santa Fe argues the trial court erred by entering partial summary judgment in favor of Bartschi on her counterclaim because (A) the court erred by reasoning that entry of judgment was required before a lis pendens could be properly recorded, and (B) Santa Fe's lawsuit "affected title to real property," and the lis pendens was therefore properly recorded pursuant to A.R.S. § 12–1191(A). The trial court properly entered partial summary judgment in favor of Bartschi if no genuine issues of material fact existed, and she was entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c). We review the court's ruling de novo. *Hourani v. Benson Hosp.*, 211 Ariz. 427, 432, ¶ 13, 122 P.3d 6, 11 (App.2005).

### A. Timing of lis pendens

¶ 9 Section 12–1191(A), A.R.S., provides in relevant part that "[i]n an action affecting

title to real property, the plaintiff at the time of filing the complaint, or thereafter, . . . may file in the office of the recorder of the county in which the property is situated a notice of the pendency of the action or defense." As previously mentioned, *see supra* ¶ 6, the trial court explained during a hearing that Santa Fe had prematurely recorded the lis pendens because it had not first obtained a judgment or a lien. Santa Fe seizes on this comment and contends the court erred in its ruling because § 12–1191(A) plainly authorizes the recordation of a lis pendens at the time a complaint is filed.

¶ 10 We agree with Santa Fe that a lis pendens may be recorded when a lawsuit is filed, as § 12–1191(A) plainly states. *Farris v. Advantage Capital Corp.*, 217 Ariz. 1, 4, ¶ 15, 170 P.3d 250, 253 (2007). We do not view the court's comments, however, as suggesting the lis pendens was improperly recorded because Santa Fe had not yet obtained a judgment for injunctive relief. It appears the court was making the point that the relief sought in the complaint would not affect title to real property unless a monetary judgment or lien was later sought and obtained based on future events. Indeed, prior to making the contested comments, the court noted that Santa Fe had self-help remedies that had to be performed before it could acquire a lien. Regardless, the propriety of the court's ruling rests on whether the lawsuit was one that affected title to real property, thereby triggering an ability to record a lis pendens pursuant to A.R.S. § 12–1191(A). We therefore turn to that issue.

### B. Affecting title to real property

¶ 11 A lis pendens provides constructive notice to prospective purchasers and lenders of a pending lawsuit that may affect title to real property. *Farris*, 217 Ariz. at 1, ¶ 1, 170 P.3d at 250; *Richey*, 140 Ariz. at 599, 684 P.2d at 171; A.R.S. § 12–1191(B). In determining whether a lis pendens was wrongfully recorded, the court is limited to considering "whether the 'action is one affecting title to real property.'" *Evergreen W., Inc. v. Boyd*, 167 Ariz. 614, 620, 810 P.2d 612, 618 (App.1991) (citation omitted). In making that determination, the court need find only "some basis" that the action is one affecting title to real property to conclude the lis pendens was not wrongly recorded. *Id.* A lis pendens is groundless or has no basis only when the claim that the action affects "title to real property has no arguable basis or is not supported by any credible evidence." *Id.* at 621, 810 P.2d at 619. A court's decision on whether the underlying action involves title to real property should not involve a decision about which party will prevail on the merits of the underlying claim. *Id.*

¶ 12 Santa Fe's complaint sought a mandatory injunction requiring Bartschi to remedy all violations of the CC & Rs by a certain date. Santa Fe contends this lawsuit affected title to Bartschi's property because (1) any action to enforce a restrictive covenant necessarily affects title to real property, and/or (2) the lawsuit may have resulted in a lien against the property.

¶ 13 To support its first contention, Santa Fe relies on this court's decision in *Tucson Estates, Inc. v. Superior Court*, 151 Ariz. 600, 729 P.2d 954 (App.1986). Plaintiffs in that case were mobile home community residents ("Original Residents") who enjoyed the right to use a golf course owned by the community developer, although the right was not reflected in deed restrictions. *Id.* at 601–02, 729 P.2d at 955–56. The developer sold the golf course to Tucson Estates, Inc. ("Tucson Estates"), which also purchased adjacent land and developed it as mobile home lots for sale to purchasers ("New Residents"). *Id.* at 602, 729 P.2d at 956. After Tucson Estates advertised that the New Residents would have access to the golf course, the Original Residents filed suit seeking, among other relief, both a declaration that an implied restrictive covenant required that the golf course be maintained for the exclusive use of the Original Residents and an injunction preventing the New Residents from using the golf course. *Id.* After initiation of the lawsuit, the Original Residents recorded a lis pendens against, among other properties, the lots owned by existing and prospective New Residents. *Id.*

¶ 14 After the trial court denied a motion to quash the lis pendens, Tucson Estates sought special action relief in this court. *Id.* One issue was whether the pending lawsuit was one "affecting title to real property" pursuant to A.R.S. § 12–1191(A), as indisputably the action would not impact fee simple title. *Id.* at 603, 729 P.2d at 957. After considering the legislative history of the statute, its purpose, and the reasoning of the Colorado Supreme Court in *Hammersley v. District Court,* 199 Colo. 442, 610 P.2d 94 (1980), which had interpreted a similar provision, the court held that an action affecting rights *incident* to title to real property fell within § 12–1191(A). *Id.* at 603–05, 729 P.2d at 957–59. The court then concluded that the pending action affected such rights because, if successful, the Original Residents would acquire an exclusive right to use the golf course as an incident of ownership, and the New Residents would lose any right to use the golf course as an incident of ownership, as represented by Tucson Estates. *Id.* at 605, 729 P.2d at 959.

¶ 15 Santa Fe contends the reasoning in *Tucson Estates* is "directly on point" and compels a conclusion that any action to enforce a restrictive covenant is one affecting a right incident to ownership of real property because any judgment would adjudicate the scope of the owner's fee rights. Thus, at oral argument before this court, Santa Fe asserted that any action filed by a homeowners' association to address violations of CC & Rs would entitle the association to record a lis pendens.

■ ¶ 16 We do not read *Tucson Estates* in the broad manner suggested by Santa Fe. The reason underlying the court's conclusion that the lawsuit affected rights incident to title was that the Original Residents sought to declare and enforce a covenant that would govern rights tied to ownership of real property and that would bind future property owners. *Id.* Thus, recording the lis pendens fulfilled the dual purposes of providing notice of the pending issues to anyone who may be affected by the outcome of the lawsuit and preventing innocent third persons from acquiring interests in the property during the lawsuit without notice of the lawsuit, thereby thwarting the court's ability to grant relief or enforce a previously issued judgment. *Id.* at 604, 729 P.2d at 958; *see also Mammoth Cave Prod. Credit Ass'n v. Gross,* 141 Ariz. 389, 391, 687 P.2d 397, 399 (App.1984) ("Under the doctrine of lis pendens, whoever purchases or acquires an interest in property that is involved in pending litigation stands in the same position as his vendor and is charged with notice of the rights of his vendor and takes the property subject to whatever valid judgment may be rendered in the litigation.") Under our reading of *Tucson Estates,* therefore, a lawsuit affects a right incident to title if any judgment would expand, restrict, or burden a property owner's rights as bestowed by virtue of that title. *See Hatch Cos. Contracting, Inc. v. Ariz. Bank,* 170 Ariz. 553, 558, 826 P.2d 1179, 1184 (App.1991) (equating "rights incident to title" as set forth in *Tucson Estates* with the lawsuit's "connection ... with rights in real property"); *Wyatt v. Wehmueller,* 163 Ariz. 12, 16, 785 P.2d 581, 585 (App.1989), *vacated in part on other grounds,* 167 Ariz. 281, 806 P.2d 870 (1991) (rejecting argument that action for breach of contract by real property purchaser against seller affected rights incident to title merely because seller had since initiated foreclosure of deed of trust; purchaser sought money damages and any judgment would not erase debt owing to seller that underlay the foreclosure); *see also Coventry Homes, Inc. v. Scottscom P'ship,* 155 Ariz. 215, 218, 745 P.2d 962, 965 (App.1987) (holding that because equitable lien is an encumbrance on real property, an action to impose such a lien is one affecting title to property).

■ ¶ 17 Turning to the facts in this case, we reject Santa Fe's contention that its action affected rights incident to title to real property. Unlike the situation in *Tucson Estates,* the lawsuit did not seek to establish the existence of a restrictive covenant, and Bartschi did not dispute the viability of the CC & Rs. Rather, Santa Fe sought to enforce the existing CC & Rs by compelling Bartschi's compliance. Any injunction entered against Bartschi would have been personal to her and would not have expanded, restricted, or burdened the rights incident to

her property title, which was already burdened by the recorded CC & Rs.[2]

¶ 18 We also reject Santa Fe's assertion that recordation of the lis pendens fulfilled the purposes underlying § 12–1191. *See Tucson Estates,* 151 Ariz. at 604, 729 P.2d at 958. The use of the property by future interest-holders would not have been affected by any judgment requiring Bartschi to comply with the CC & Rs. As Santa Fe acknowledged at oral argument before this court, such a judgment would have been personal to Bartschi and would not have run with the land.

¶ 19 Additionally, future interest-holders could not have prevented Santa Fe from acquiring relief from the court. Had Bartschi transferred her interest in the property either before entry of judgment or after Santa Fe incurred self-help expenses, Santa Fe still could have obtained relief from the court. The CC & Rs were recorded, and therefore all future interest-holders were placed on notice of the restrictions on title. If the new owner also refused to comply with the CC & Rs, Santa Fe could have filed a new lawsuit or amended the existing one to compel compliance. Moreover, it would have retained the ability to amend its complaint or bring a new action against Bartschi to seek reimbursement for any self-help expenses and fees incurred in the initial action. Consequently, the purposes underlying A.R.S. § 12–1191(A) were not served by Santa Fe's recordation of the lis pendens.

¶ 20 Santa Fe next argues that an action that may result in a lien affects title for purposes of A.R.S. § 12–1191(A). To support its argument, Santa Fe cites *Coventry Homes,* which held that an action to impose an equitable lien on real property was an action "affecting title to that property." 155 Ariz. at 218, 745 P.2d at 965. Because Santa

Fe sought a lien on Bartschi's property if she failed to obey any eventual injunction and Santa Fe had to incur self-help expenses that Bartschi refused to reimburse, it contends the lawsuit was one affecting title to real property.

¶ 21 We agree with Bartschi that *Coventry Homes* does not support Santa Fe's position. Although the court in that case held that a lawsuit to impose an equitable lien was one affecting title to that property, it rejected the notion that merely asking the court for imposition of a lien on real property compelled a conclusion that the lawsuit affected title to that property. *Id.* at 218, 745 P.2d at 965 ("We find that neither the purposes of A.R.S. § 12–1191 nor A.R.S. § 33–420 would be served by permitting parties to record a notice of lis pendens to recover a debt merely by characterizing the action as one seeking a constructive trust or equitable lien."). Instead, the court stated that a basis must exist to conclude that a lien would be imposed on the property subject to the lis pendens. *Id.* Because no basis existed in *Coventry Homes,* the court determined that the lis pendens was groundless. *Id.* at 218–19, 745 P.2d at 965–66.

¶ 22 Like the *Coventry Homes* court, we decide that at the time Santa Fe recorded the lis pendens, no basis existed to conclude that a lien would be imposed on real property. We agree with the trial court and Bartschi that the lis pendens was simply premature. In essence, by asking for imposition of a lien should Bartschi fail in the future to comply with an injunction order and then refuse to pay self-help expenses, Santa Fe sought anticipatory relief, which was not then ripe for adjudication. *Town of Gilbert v. Maricopa County,* 213 Ariz. 241, 244–45, ¶ 8, 141 P.3d 416, 419–420 (App.2006), quoting

2. Santa Fe also cites the Colorado Supreme Court's decision in *Hammersley,* which *Tucson Estates* relied on in deciding that A.R.S. § 12–1191(A) applies to lawsuits filed to adjudicate rights incident to title. 151 Ariz. at 603–05, 729 P.2d at 957–59. The *Hammersley* court ultimately held that the lawsuit to enforce a deed restriction in that case affected rights incident to title as the "case involve[ ed] the extent of limitations on the rights of an owner of a lot in a subdivision to construct a residence on that property." 610

P.2d at 96. To the extent the *Hammersley* court held that a lawsuit seeking enforcement of *any* established deed restriction affects rights incident to real property, we disagree for the reasons explained. *See supra* ¶¶ 17–18. Moreover, we do not read *Tucson Estates* as approving the *Hammersley* court's application of the rights-incident-to-title principle; the *Tucson Estates* court did not address that aspect of the Colorado decision.

*Winkle v. City of Tucson,* 190 Ariz. 413, 415, 949 P.2d 502, 504 (1997) ("Ripeness is analogous to standing because the 'doctrine prevents a court from rendering a premature judgment or opinion on a situation that may never occur.'"); *see also Farnan v. First Union Nat'l Bank,* 263 N.C. 106, 139 S.E.2d 14, 18 (1964) ("The courts have no jurisdiction to enter anticipatory judgments."). If these events came to pass, Santa Fe could then have sought judgment for self-help expenses and imposition of a lien pursuant to the CC & Rs. At that point, assuming the CC & Rs provided for imposition of a lien, *see infra* note 3, a basis may have existed to conclude that Santa Fe's action affected title to real property, supporting recordation of a lis pendens. *Coventry Homes,* 155 Ariz. at 218, 745 P.2d at 965. Because those events had not yet occurred, the trial court correctly ruled that the lis pendens was premature and groundless.[3]

¶ 23 In summary, we hold that Santa Fe's lawsuit to compel Bartschi's compliance with CC & Rs was not an action affecting title to real property pursuant to A.R.S. § 12–1191(A). Consequently, the trial court properly found that Santa Fe's recordation was groundless.

## II. Propriety of judgment under § 33–420(A)

### A. Santa Fe's knowledge of groundless lis pendens

¶ 24 Section 33–420(A), A.R.S., provides in pertinent part that one "purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded ...

knowing or having reason to know that the document is ... groundless ... or is otherwise invalid is liable to the owner ... of the real property for the sum of not less than five thousand dollars ... and reasonable attorney fees and costs of the action." Santa Fe argues the trial court erred in finding liability under this provision because Bartschi failed to show that Santa Fe knew or had any reason to know the lis pendens was groundless. Specifically, it contends that its position was colorable in light of *Tucson Estates* and emphasizes that even the trial court initially found that the lis pendens was valid. Bartschi responds that Santa Fe's scienter was evidenced by the contrast in facts between this case and others that involved title to property and the fact that it was represented by experienced counsel throughout the proceedings.

¶ 25 Santa Fe failed to raise this argument to the trial court, and has therefore waived it on appeal. *Odom v. Farmers Ins. Co. of Ariz.,* 216 Ariz. 530, 535, ¶ 18, 169 P.3d 120, 125 (App.2007). Regardless, we do not find it meritorious. As previously explained, *see supra* ¶ 16, the situation in the *Tucson Estates* case was readily distinguishable from the one in this case, and Santa Fe's recordation of the lis pendens did not serve the underlying purpose of A.R.S. § 12–1191(A). Additionally, Santa Fe has not cited any cases with similar facts.[4] Santa Fe's president signed the notice of lis pendens and therefore clearly knew that Santa Fe's attorneys would record it. Thus, the trial court properly imputed the attorneys' knowledge to Santa Fe. *Hatch Cos. Contracting,* 170 Ariz. at 559, 826 P.2d at 1185 (holding that because client

---

**3.** At oral argument before this court, Santa Fe argued that because it sought attorneys' fees in its complaint and § 10.3 of the CC & Rs provided for an automatic lien against Bartschi's property upon entry of judgment, the lawsuit was one affecting title to real property. Because Santa Fe raised this argument for the first time at oral argument, it waived this issue. *Mitchell v. Gamble,* 207 Ariz. 364, 369–70, ¶ 16, 86 P.3d 944, 949–50 (App.2004). Regardless, we reject it. Section 10.3 provides that charges incurred by Santa Fe to repair or maintain a homeowner's lot shall be treated as an assessment and can be collected in accordance with the procedures provided by Article VI of the CC & Rs. We do not have a copy of Article VI in this record. Even

assuming Article VI authorizes imposition of a lien, however, the plain language of § 10.3 does not apply to attorneys' fees incurred in a lawsuit.

**4.** Although Santa Fe cited *Hammersley,* which involved enforcement of a deed restriction, we do not consider the case analogous as it involved erection of a permanent structure on real property. Giving notice to future interest-holders that a structure they may be considering purchasing may be demolished or altered is significantly different than giving notice that ordinary maintenance may be required to bring property into compliance with CC & Rs.

was aware attorney was recording lis pendens, attorney's knowledge would be imputed to client).

¶ 26 Santa Fe finally argues the trial court erred by awarding Bartschi attorneys' fees attributable to her defense of the complaint. Bartschi responds that the issues in the complaint and counterclaim were entwined, and the trial court therefore properly awarded all her attorneys' fees.

 ¶ 27 In *Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 189, 673 P.2d 927, 933 (App.1983), the supreme court explained that, "[w]here claims could have been litigated separately, fees should not be awarded for those unsuccessful separate and distinct claims which are unrelated to the claim upon which the [requesting party] prevailed." We agree with Santa Fe that its claim for enforcement of the CC & Rs was separate and distinct from the counterclaim. The propriety of the lis pendens did not depend on the merits of Santa Fe's complaint for injunctive relief. *Evergreen W.,* 167 Ariz. at 621, 810 P.2d at 619 (holding court's ruling on claim of wrongful recordation of lis pendens does not involve inquiry about the merits of the underlying lawsuit). Moreover, although the court ultimately dismissed the complaint, it did so only after Bartschi agreed to and did perform the maintenance on her property that formed the basis for the complaint, supporting a conclusion that Santa Fe's claim had some merit. It would be unfair to award Bartschi her attorneys' fees incurred in defending a meritorious complaint under the guise of a request for fees pursuant to A.R.S. § 33–420(A). For these reasons, we vacate that portion of the judgment that awards Bartschi her attorneys' fees and remand to the trial court to award only those fees attributable to her counterclaim.

### ATTORNEYS' FEES ON APPEAL

¶ 28 Santa Fe requests an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A) (2003). We deny that request as on balance, Santa Fe is not the successful party on appeal. Bartschi requests an award of attorneys' fees pursuant to A.R.S. § 33–420(A). Because Bartschi substantially prevailed in preserving the judgment on her counterclaim, an award of reasonable attorneys' fees is mandated. *Janis v. Spelts,* 153 Ariz. 593, 598, 739 P.2d 814, 819 (App.1987). Thus, we grant Bartschi's request subject to her compliance with Arizona Rules of Civil Appellate Procedure 21(c).

### CONCLUSION

¶ 29 For the foregoing reasons, we affirm the entry of partial summary judgment in favor of Bartschi on her counterclaim. We vacate the award of attorneys' fees and remand for the court to award only those attorneys' fees attributable to Bartschi's counterclaim. We also award Bartschi reasonable attorneys' fees and costs incurred on appeal.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and JON W. THOMPSON, Judge.

