NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IMELDA G. PRAKELT, *Plaintiff/Appellee*,

*v.*

REFORM PHYSICIANS, LLC, et al., *Defendants/Appellants*.

No. 1 CA-CV 23-0124
FILED 12-26-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-093333
No. CV2020-094234
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

Dessaules Law Group, Phoenix
By Jonathan A. Dessaules, F. Robert Connelly
*Counsel for Plaintiff/Appellee*

Jaburg & Wilk PC, Phoenix
By Roger L. Cohen, Kathi M. Sandweiss
*Counsel for Defendant/Appellant*

_____

## MEMORANDUM DECISION

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

_____

**C A T L E T T**, Judge:

¶1        This appeal turns on the authenticity of the signatures on two quit claim deeds. Anelime Holding LLC ("Anelime"), Reform Physicians LLC ("Reform Physicians"), Harinder Takyar ("Takyar") and his wife Raman Takyar (collectively the "Takyars") claim the signatures are authentic. Imelda G. Prakelt ("Prakelt") claims they are not. After hearing testimony and taking evidence during a three-day bench trial, the superior court agreed with Prakelt that the signatures are not authentic. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Prakelt and Takyar began a romantic relationship in 2012. The two also worked together—Prakelt provided various services for three health care companies Takyar controlled. All three of those companies closed between 2016 and 2017. In November 2019, Prakelt and Takyar ended their relationship.

¶3        According to the Takyars**,** Prakelt signed two quit claim deeds in January 2020, transferring two properties she owned to Reform Physicians, a company the Takyars own. One of the properties was Prakelt's primary residence in Maricopa County ("Maricopa Property") and the other was a rental property in Pima County ("Pima Property"). Reform Physicians later paid off Prakelt's $311,000 mortgage on the Maricopa Property. Reform Physicians transferred both properties to Anelime, another company the Takyars own.

¶4        In May 2020, Prakelt recorded a notice of *lis pendens* against both properties and filed two separate quiet title actions against Reform Physicians, Anelime, and the Takyars, one in Maricopa County and one in Pima County. Prakelt alleged she had no knowledge of the property transfers. Anelime filed quiet title counterclaims against Prakelt. The two cases were eventually consolidated into one action in the Maricopa County Superior Court.

¶5          After discovery and motion practice, the superior court held a three-day bench trial.  Prakelt disputed signing either deed or otherwise intending to transfer either property.  Takyar alleged that, in 2012, Reform Physicians agreed to loan Prakelt $200,000 as her contribution for a partnership interest in two companies.  According to Takyar, Prakelt agreed to transfer the Pima Property to Reform Physicians for a release of this debt.

¶6          In support, Takyar introduced a Promissory Note (the "Note") that Prakelt allegedly signed on October 1, 2012, which a notary allegedly signed and stamped on October 22, 2012.  The Note contained various inconsistencies.  Takyar also produced two K-1 tax forms for the two businesses, stating Prakelt invested $140,000 in one and $60,000 in the other.  Neither form was signed and there was no evidence either form was sent to the IRS.  Prakelt denied she borrowed the money, had any knowledge of the Note prior to receiving a copy from Takyar in 2020, or ever had an ownership interest in either business.

¶7          Takyar also testified that Prakelt agreed to transfer the Maricopa Property to Reform Physicians in return for paying off Prakelt's $311,000 mortgage.  Both parties agreed Reform Physicians paid off the mortgage, but Prakelt testified that Takyar did so to rekindle their relationship and to thank her for the work she had done for him and his companies over the years.

¶8          Both deeds contain drafting errors.  Takyar testified that Prakelt personally typed both deeds in his presence.  But both deeds misspell Prakelt's middle name as "Gutieerrez"—her middle name is correctly spelled "Gutierrez"—and separately identify her as "Imelda Prakelt G.," which is not her legal name.  Each deed includes three notary stamps and notary signatures from Lety Santos ("Santos"), a notary public.  The date above Prakelt's purported signature on the Pima Property deed is January 28, 2019, but Santos hand wrote "Date corrected January 30, 2020" next to it.  Santos also stamped and signed the deed in two other locations, using January 31, 2020 as the date.  The Maricopa Property deed also includes three separate notary signatures, one correcting the date above Prakelt's purported signature, but each dated January 31, 2020.

¶9          Santos admitted she did not have Prakelt sign her notary journal when Prakelt allegedly signed the deeds, and Santos testified she was unaware she was required to do so.  After the validity of Prakelt's signature became an issue, Santos drafted, signed, and stamped a document titled, "Verification Regarding Notarized documents" (the "Verification").  The Verification states that Prakelt signed the deeds, and it

3

contains detailed information about each property. Santos testified that she drafted the Verification without any prior communication with Takyar and without possessing the deeds at issue. She also testified she did not know if the Verification was accurate, and Santos' employer later prohibited Santos from notarizing documents for Takyar.

¶10        The superior court found Prakelt's testimony to be "significantly more credible than Takyar," and quieted title on both properties in Prakelt's favor. The court recognized there were questions regarding why Takyar would pay off Prakelt's mortgage, but it found "those questions are significantly outweighed by the weaknesses and inconsistencies in Takyar's testimony[.]" Specifically, the court found no reliable financial documentation showing Reform Physicians actually transferred money to Prakelt or any third-party on her behalf, which was "highly suspicious since Defendants could have obtained and disclosed their own bank records." The court also found the fact that Prakelt's name was misspelled in the deeds "significantly undermines Takyar's claim that [Prakelt] drafted the Deed."

¶11        The court further found Santos' testimony that she was able to draft the Verification without consulting Takyar or having the deeds in front of her lacked credibility. Consequently, the court found that Prakelt is the rightful owner of both properties and awarded her attorneys' fees under A.R.S. § 12-1103(B).

¶12        The Takyars, Anelime, and Reform Physicians timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13        In an appeal after a bench trial, "we review the evidence in a light most favorable to sustaining the verdict," and will accept the superior court's factual findings unless clearly erroneous, "giving due regard to the opportunity of the court to judge the credibility of witnesses." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51 ¶ 11 (App. 2009); Ariz. R. Civ. P. 52(a)(6). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Castro*, 222 Ariz. at 51–52 ¶ 11. Substantial evidence exists if a reasonable person could reach the same result as the superior court. *Id.* at 52 ¶ 11. We review any questions of law *de novo*. *Id.* ¶ 12; *Ariz. Bd. of Regents v. Phx. Newspapers, Inc.*, 167 Ariz. 254, 257 (1991).

## I. Quiet Title

¶14 Takyar first argues the superior court erred in granting quiet title to Prakelt because there is a presumption that Prakelt's signatures on the deeds are valid, which, he contends, can only be overcome with clear and convincing evidence. Thus, according to Takyar, the court should have ended its inquiry after examining the face of the deeds, and it erred by making factual findings regarding witness credibility. Prakelt asserts Takyar waived this argument by failing to raise it below. We conclude the issue was sufficiently preserved because, in the superior court, both parties discussed various aspects of presumptions regarding signature authenticity.

¶15 In arguing that Prakelt's signature is presumptively authentic, Takyar relies primarily on A.R.S. § 47-3308(A), located in Arizona's Uniform Commercial Code ("UCC"). The UCC provides that, "[i]n an action with respect to an instrument," the authenticity of a signature is admissible unless denied in the pleadings. A.R.S. § 47-3308(A). If the validity of the signature is contested, the person claiming validity has the burden of proof, "but the signature is presumed authentic[.]" *Id.*

¶16 Takyar's reliance on the UCC's presumption is misplaced— the presumption does not apply here because neither deed at issue is an "instrument." The UCC defines an "instrument" as a "negotiable instrument." A.R.S. § 47-3104(B). And it defines a "negotiable instrument" as "an unconditional promise to order or pay a fixed amount of money[.]" A.R.S. § 47-3104(A). The deeds at issue are not negotiable instruments— they do not contain a promise that Prakelt would pay an amount of money to any of the defendants or anyone else. Thus, the UCC's presumption is inapplicable.

¶17 Takyar also maintains that we should apply a presumption of validity that can only be overcome by clear and convincing evidence because the deeds were notarized. We disagree that such a presumption applies in this case and that clear and convincing evidence is required to overcome that presumption.

¶18 First, even assuming notarization could result in the presumption Takyar advocates, such a presumption would only trigger if the notary complied with the law. *See* 1A C.J.S. Acknowledgements § 86 ("*A proper acknowledgment* does not conclusively establish execution of a deed but is strong proof thereof[.]" (emphasis added)). Here, there was substantial evidence that Santos did not so comply. Santos admitted she

did not have Prakelt sign her notary journal when Santos notarized the deeds. That failure is a violation of A.R.S. § 41-319(A), which required Santos to include a variety of information in her journal to prove she witnessed Prakelt's signatures. Alternatively, § 41-319(B) allows a notary who personally knows a signer to retain a copy of the notarized documents in lieu of making a journal entry, but Santos did not claim to have followed that path. The failure to establish Santos lawfully witnessed Prakelt sign the deeds removes any presumption that would otherwise follow a notarial act.

¶19        Second, the evidentiary standard required to defeat a presumption based on notarization is unclear. Takyar cites no Arizona case law, nor have we located any, establishing a "clear and convincing evidence" presumption based on notarization of a deed. Instead, a notarized signature is presumed valid unless someone comes forward with contrary evidence. As our supreme court has said, a notary certificate on an affidavit is presumptive evidence a party swore to the statements contained therein "so long as [the certificate] stood unimpeached[.]" *Lewis v. State*, 32 Ariz. 182, 189 (1927); *see also* 1A C.J.S. § 76 ("A certificate of acknowledgement attached to an instrument such as a deed or a mortgage raises the presumption of due execution, which can be rebutted only after being weighed against *any evidence* adduced to show that the subject instrument was not duly executed." (emphasis added)). Here, the signatures on the deeds did not stand unimpeached because Prakelt disputed their authenticity and produced evidence supporting her claim.

¶20        In any event, the record contained enough evidence to overcome any presumption. Under Takyar's version of events, Prakelt drafted and signed the deeds. But there was sufficient evidence supporting the superior court's conclusion otherwise.

¶21        Starting with the issue of how the deeds were created, Takyar claimed Prakelt typed the deeds. The evidence sufficiently supported the court's finding that Prakelt did not *create* the deeds. Prakelt, for example, testified she was not involved in drafting either deed. The deeds misspelled Prakelt's middle name and referred to "Imelda Prakelt G.," which is not, and has never been, Prakelt's legal name.

¶22        The evidence also sufficiently supported the superior court's conclusion that Prakelt did not *sign* the deeds. Prakelt's own testimony supports that finding—Prakelt testified she did not sign the deeds. Moreover, the notary who allegedly witnessed the signatures could not produce a notary journal or any other evidence proving Prakelt signed the

deeds. And the deeds themselves reflected multiple different notary stamps and multiple execution dates. For example, the deed for the Pima Property reflected three notary stamps and three execution dates.

¶23 Lacking the kind of evidence a notary would ordinarily provide, Takyar introduced the Verification to prove Prakelt signed the deeds. Santos signed the Verification under oath to prove she notarized Prakelt's signatures on the two deeds. The Verification states Santos "personally examined . . . Quit Claim deed signed by Imelda G. Prakelt regarding property in Maricopa County with Parcel Number 304-74-152 on January 31st 2020," and "Quit Claim deed signed by Imelda G. Prakelt regarding property in Pima County with Parcel Number 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 on January 31st 2020." Santos claimed she drafted the Verification under penalty of perjury, but admitted she did not know what "perjury" means. Santos claimed she did not have any communications with Takyar or remember reviewing the deeds before she drafted the Verification. But she did not know how so much detailed information—including accurate parcel numbers and the identity of a statutory agent—made its way into the Verification. Santos ultimately admitted she did not know whether the substance of the Verification was true when she drafted it.

¶24 Then there is the issue of witness credibility. The superior court heard live testimony from the primary players involved and we have only a cold record. Thus, "the trial court, not this court, assesses credibility." *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 295 ¶ 10 (App. 2000). The superior court here concluded that Prakelt was "significantly more credible than Takyar" because "[m]uch of Takyar's testimony simply did not make sense." The court also found that Takyar "contradicted his own testimony numerous times during the trial." Similarly, the court determined that the testimony Santos provided was not "the least bit credible." We defer to these credibility determinations, which further support the court's ultimate factual conclusions regarding the authenticity of the signatures at issue.

¶25 In sum, the record contained sufficient evidence to support the superior court's finding that Prakelt did not sign the deeds regardless of whether a presumption exists, or the quality of evidence needed to overcome it. *See Castro*, 222 Ariz. at 51–52 ¶ 11. Because we reach this conclusion, we need not address whether the deeds' language was sufficient to convey the properties from Prakelt to Takyar.

## II.     Wrongful *Lis Pendens*

¶26     Takyar also argues the superior court erred by refusing to find that Prakelt wrongfully recorded a notice of *lis pendens*. "A lis pendens provides constructive notice to prospective purchasers and lenders of a pending lawsuit that may affect title to real property." *Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 395 ¶ 11 (App. 2008); A.R.S. § 12-1191(B). A *lis pendens* is wrongfully recorded only if the action does not affect title to real property. *Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. at 395 ¶ 11. Here, both parties filed quiet title actions disputing who held title to the properties. This litigation, therefore, clearly could have affected (and ultimately did affect) the properties' titles and, consequently, regardless of who ultimately prevailed, Prakelt did not wrongfully record the *lis pendens*.

## III.    Attorneys' Fees

¶27     Finally, Takyar maintains the superior court erred by awarding Prakelt attorneys' fees because she should not have prevailed on her quiet title claim. A party may recover attorneys' fees in a quiet title action by providing the other party with five dollars and requesting execution of a quit claim deed twenty days prior to bringing a quiet title action. A.R.S. § 12-1103(B). Prakelt complied with both statutory requirements and prevailed in her quiet title action. Thus, the superior court did not abuse its discretion in granting Prakelt's request for attorneys' fees. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350 ¶ 17 (App. 2006) (reviewing an attorneys' fee award for an abuse of discretion).

## ATTORNEYS' FEES

¶28     Prakelt has also, pursuant to A.R.S. § 12-1103, requested her attorneys' fees and costs on appeal. We grant those requests upon Prakelt's compliance with Arizona Rule of Civil Appellate Procedure 21. We deny Anelime's and Reform Physicians' requests for attorneys' fees because neither prevailed on their quiet title claims.

## CONCLUSION

¶29        We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:    TM