258 P.3d 185

Seth FAGERLIE, Plaintiff/Appellee,

v.

MARKHAM CONTRACTING CO., INC., an Arizona corporation, Defendant/Appellant.

Markham Contracting Co., Inc., an Arizona corporation, Third–Party Plaintiff/Counter–Defendant/Appellant,

v.

Amol Rakkar, Trustee of the Rakkar Family Trust dated August 4, 2004; Daniel Ardelean; M & I Marshall and Ilsley Bank; Sorina Hreniuc; Maria Bonchis; Lorenso Lopez and Kelly Sue Lopez, husband and wife; Kenneth Cropper and Elaine Cropper, husband and wife; Ti-

motei Husua and Maria Husua, husband and wife; Simion Oros and Viorica Olga Oros, husband and wife; Mike Olari and Ana Olari, husband and wife; Romulus I. Rus, a married man; Emanuela Oprea, a married woman; Cornel Avram and Daniela D. Avram, Trustees, or their successors in trust under the Avram Family Trust dated December 30, 2003; Dorel I. Muresan, a married man; Dennis L. Barber and Lois A. Barber, Trustees of the Dennis L. Barber and Lois A. Barber Family Trust created November 5, 1999; Leland Yoder and Sharon Yoder, husband and wife; Carl J. Winski, III and Jane Doe Winski, husband and wife; Ioan John Avram, a married man; Gheorghe Lazan and Maria Lazan, husband and wife; John Hreniuc and Sorina Hreniuc, husband and wife; Slamed, Inc., a Nevada corporation; Alliance Bank of Arizona, an Arizona banking corporation; National Bank of Arizona, a banking institution; Desert Hills Bank, a banking institution; Indymac Bank, FSB, a foreign banking institution; Mortgage Registration Systems, Inc., a foreign corporation, Third Party Defendants/Counter–Claimants/Appellees.

No. 1 CA–CV 10–0051.

Court of Appeals of Arizona, Division 1, Department D.

May 31, 2011.

---

4. We note that the Civil Rules provide a remedy if the deposition questioning becomes inappropriate. Ariz. R. Civ. P. 30(d).

Plaintiff/Appellee and Third Party Defendants/Counter–Claimants/Appellees.

Osborn Maledon, PA by Thomas L. Hudson, Joseph N. Roth, Phoenix, Palecek & Palecek, PLLC by Karen A. Palecek, Kimberly A. Lane, Scottsdale, Attorneys for Defendant/Appellant.

## OPINION

IRVINE, Judge.

¶ 1 Markham Contracting Company ("Markham") appeals from summary judgment entered in favor of Seth Fagerlie and other individual lot owners of The Estates at Happy Valley (collectively, "lot owners"). The trial court found that Markham's lien was technically defective and sanctioned Markham for filing wrongful lien documents. We hold: (1) that Markham could claim a lien on the lots for work done at the "instance" of the developer, Estates at Happy Valley, LLC ("EHV"), as the agent of the lot owners; (2) that Markham properly served the preliminary twenty-day notice on EHV as an owner/reputed owner or, alternatively, as an interested party; (3) that the beginning of the time period for recording the lien presents a genuine issue of material fact; (4) that Markham could correct documents filed with the lien within the time period for perfecting it, and that it substantially complied with the recording requirements in doing so; and (5) a lis pendens filed with a lien foreclosure action does not have to be notarized. We therefore reverse and remand. Because we hold that a lis pendens filed with the mechanic's lien need not be notarized, and Markham's refusal to remove the lien was the result of a good-faith dispute over its validity, we vacate the trial court's award of sanctions.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 2004, EHV acquired a large, vacant parcel in Peoria. In April 2005, Markham submitted a bid to improve the parcel for residential development ("the project"). EHV divided the parcel into twenty-eight lots and began selling them to the lot owners as "site-improved lots."

Ramras Law Offices, PC by David N. Ramras, Ari Ramras, Phoenix, Attorneys for

¶ 3 Markham first supplied labor and materials for the project before EHV formally accepted its bid. On June 20, 2005, Markham served EHV with a preliminary twenty-day notice ("Preliminary Notice") based on information from a recorded final plat. The Preliminary Notice named EHV as the "OWNER OR REPUTED OWNER," and attached a legal description of the subject property ("Original Exhibit A"). By that date, EHV had sold most of the lots, retaining ownership of the remainder. Markham, however, did not have actual knowledge of any particular sale, and EHV failed to respond to the Preliminary Notice. Thereafter, EHV sold the remaining lots.

¶ 4 Markham performed over three million dollars of work. By August 2007, EHV had fallen behind on its payments and signed an acknowledgment of indebtedness, agreeing that it still owed Markham $569,565 for the project.

¶ 5 On December 28, 2007, Markham recorded a lien on the development ("First Lien"). The applicable statute required the lien to include the property's legal description and a copy of the preliminary twenty-day notice and its proof of mailing. Ariz. Rev.Stat. ("A.R.S.") § 33–993(A)(1) and (6) (2007). Markham attached a proper legal description as Exhibit A ("First Lien Exhibit A"), but failed to include with the copy of the Preliminary Notice, the Original Exhibit A and the correct proof of mailing.

¶ 6 In January 2008, Markham completed striping work, and the City of Peoria allowed it to remove barricades used during the project. On January 24, 2008, Markham recorded an amended notice and claim of lien ("Amended Lien"), changing the description of labor performed. The Amended Lien also attached First Lien Exhibit A instead of Original Exhibit A. Markham mailed this to each of the lot owners with the First Lien and First Lien Exhibit A.

¶ 7 By letter to Markham's counsel dated February 29, 2008, the lot owners argued the First Lien and Amended Lien were invalid and demanded that Markham release both liens. On March 20, 2008, Markham recorded a Notice of Correction of Replacement to the Amended Lien ("Notice of Correction"), attaching a retyped version of Original Exhibit A made by Markham's attorney based verbatim on the original copy and the correct proof of mailing for the Preliminary Notice. In April and May 2008, Markham served the lot owners with duplicate copies of the Notice of Correction and the retyped version of Original Exhibit A.

¶ 8 In April 2008, Fagerlie sued Markham to remove the First Lien, Amended Lien and Notice of Correction (collectively, "mechanic's lien"). He sought punitive damages under A.R.S. § 33–420 (2007), claiming that Markham filed invalid liens knowing or having reason to know that they were invalid, and that Markham willfully refused to correct them. Markham filed a counterclaim and third-party action against EHV and all the lot owners to enforce its lien and recorded a lis pendens against the lots. Markham also brought other third-party claims against EHV for the outstanding balance plus interest. Default was entered against EHV in September 2008. EHV is not a party to this case.

¶ 9 Both sides moved for summary judgment. The trial court granted the lot owners' motion and awarded $6000 to each lot owner and mortgagor (as beneficial owner) for recording and serving incorrect lien documents, and additional attorneys' fees. It deemed Markham's motion for summary judgment on its counterclaims moot.

¶ 10 The minute entry ruling stated: "In support of this ruling the Court essentially adopts the rationale and argument presented by the Lot owners in their Reply Memorandum." Markham filed a motion for clarification. The trial court responded, "In the Court's view, the Lot Owners['] legal argument[s] identified by the parties as Defects No. 1, 2, and 3 clearly support this ruling." These are the same grounds that the lot owners argue on appeal justify affirming the trial court and are listed in paragraph 12 below. The trial court denied Markham's motion for reconsideration. Markham timely appealed.

## DISCUSSION

¶ 11 We review a grant of summary judgment de novo and view all facts and reason-

able inferences therefrom in the light most favorable to Markham, against whom judgment was entered. *Lowe v. Pima County,* 217 Ariz. 642, 646, ¶ 14, 177 P.3d 1214, 1218 (App.2008). Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ariz. R.Civ.P. 56(c); *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### A. Validity of Mechanic's Lien

¶ 12 Markham argues the trial court erred by finding that its mechanic's lien was invalid due to six alleged defects: (1) Markham's work was not furnished at the instance of the lot owners; (2) the Preliminary Notice was not served on the lot owners; (3) the mechanic's lien was not timely recorded; (4) Original Exhibit A was not attached to the First Lien; (5) the Preliminary Notice's proof of mailing was not attached to the First Lien; and (6) the lis pendens was not notarized.

¶ 13 Arizona's lien statutes are remedial in nature and should be liberally construed to primarily protect laborers and materialmen who enhance the value of another's property. *Performance Funding, L.L.C. v. Ariz. Pipe Trade Trust Funds,* 203 Ariz. 21, 24, ¶ 10, 49 P.3d 293, 296 (App.2002). At the same time, the statutory requirements for perfecting a mechanic's lien must be strictly followed. *MLM Constr. Co. v. Pace Corp.,* 172 Ariz. 226, 229, 836 P.2d 439, 442 (App. 1992). These seemingly inconsistent principles are harmonized by requiring that all the statutory steps for perfecting a lien be followed, but permitting substantial compliance with any particular step so long as the purposes of the mechanic's lien statutes are achieved. *Id.* With these principles in mind, we examine each of the alleged defects.

#### 1. Work Furnished at the Instance of Owner or Agent

¶ 14 A lien is valid if "the work was done or the articles were furnished at the instance of the owner ... or his agent." A.R.S. § 33–

1. We cite to the current version of relevant statutes when no revisions material to this decision

981(A) (2007).[1] The lot owners argue Markham's work was not done at their "instance" because EHV was not their agent.

¶ 15 Section 33–981(B) defines an agent as follows, in pertinent part:

> Every contractor ... or other person having charge or control of the construction, alteration or repair, either wholly or in part, of any ... improvement is the agent of the owner for the purposes of this article, and the owner shall be liable for the reasonable value of labor or materials furnished to his agent.

Section 33–983(B) (2007), which applies to lots within an incorporated city, goes slightly further by expressly referring to a "subdivider" and improvements "in front of or adjoining" lots:

> Every contractor ... subdivider or other person having charge or control of the improvement or work on any such lot or parcel of land, either wholly or in part, is the agent of the owner for the purposes of this section, and the owner shall be liable for the reasonable value of ... labor or material furnished at the instance of such agent, upon a lot or parcel of land as prescribed in this section, or any street, alley or proposed street or alley, within, in front of or adjoining such lot or parcel of land.

Under the plain terms of these statutes, EHV was the agent of the lot owners for purposes of the lien statutes. It was the subdivider in charge of the work on the parcel that included the lots at issue. That is all the statutes require.

¶ 16 Citing *McDowell v. Perry,* 9 Cal. App.2d 555, 51 P.2d 117, 121 (1935), the lot owners argue that EHV was not a statutory agent unless it "supervised [or] actually performed any of the work." Their reliance on *McDowell* is misplaced. In *McDowell,* a vendee agreed to drill a well on land purchased from the vendor. *Id.* at 118–19. The vendee hired a third-party contractor to perform the work. The contractor later sought

have occurred.

reimbursement from the vendor, who continued to own the land because the sale never took place. *Id.* at 119. Under the then existing California statute, an agent was defined as "every contractor ... or other person having charge of the construction of any building or other improvement." *Id.* at 121. The California court of appeal interpreted this to mean that an agent is within "a definite class of persons who are engaged in the actual performance of the specified work." *Id.*

¶ 17 The Arizona statutes are much broader, defining an agent as a person "having charge or control" of the "construction," A.R.S. § 33–981(B), or "improvement or work on any such lot or parcel of land." A.R.S. § 33–983(B). In this case, EHV's sales contract with the lot owners effectively placed it in control of the improvement project which it hired Markham to perform. Consequently, EHV was the lot owner's agent for lien purposes.

¶ 18 The lot owners also contend that no lien exists because EHV had no implied authority to act as their agent. We disagree. Arizona's "lien statutes do not create actual agency, but merely make the contractor a statutory agent for the sole purpose of securing the lien rights of the workman." *Stratton v. Inspiration Consol. Copper Co.,* 140 Ariz. 528, 531, 683 P.2d 327, 330 (App. 1984). This "statutory agency fiction" was created "to allow [a] subcontractor or material supplier to pursue his remedies directly against the owner" when privity is lacking. *Id.; see also Mills v. Union Title Co.,* 101 Ariz. 297, 300–01, 419 P.2d 81, 84–85 (1966) (finding owner subject to mechanic's lien because person hiring labor and materials was obligated to make improvements under contract with owner and acted as an agent within the meaning of § 33–981).

¶ 19 This is not a case where the improvements at issue were not part of the property owners' agreement or contract. EHV had a contractual duty to provide improvements because it sold "site-improved lots" to the lot owners. Because improved lots constituted the very subject matter of the transaction, the improvements were not mere expectations, but consideration flowing to the lot

owners under their contract with EHV. *See Mills,* 101 Ariz. at 300, 419 P.2d at 84 (holding that a building that was part of consideration flowing .to vendor was not merely an expectation of an improvement, but a contractual obligation). Therefore, EHV acted as a statutory agent by hiring Markham to perform EHVs contractual obligations.

### 2. Service of the Preliminary Twenty–Day Notice

¶ 20 The lot owners next argue that Markham could not serve EHV with the Preliminary Notice because EHV was neither the owner nor reputed owner when the notice was served. We disagree.

¶ 21 In order for a mechanic's lien to be valid, a contractor must serve "the owner or the reputed owner" with a written preliminary notice. A.R.S. § 33–992.01(B) (2007). A "reputed owner" is one having "for all appearances the title and possession of property." *Lewis v. Midway Lumber Inc.,* 114 Ariz. 426, 431, 561 P.2d 750, 755 (App. 1977). "It does not necessarily mean the owner of record, although such an owner *is* a reputed owner." *Id.* (emphasis added). If a lien claimant names a reputed owner, it must establish that it took reasonable efforts to ascertain the owner or reputed owner of the property. *Id.* at 432, 561 P.2d at 756.

¶ 22 The record shows EHV was the owner of approximately one-third of the lots in the subdivision when the Preliminary Notice was served. As to the remaining lots, Markham attempted to ascertain the owners by checking a final plat, which was recorded with the final deed. This final plat named EHV as the "OWNER DEVELOPER" and showed that the property was divided into twenty-eight lots. The plat also gave a legal description of the property as "Parcel No. 1, Parcel No. 2 and Parcel No. 3." The description of the subject real property used in Original Exhibit A matches that listed in the final plat. This corroborates Markham's claim that it served EHV according to information from the public record. *See Lewis,* 114 Ariz. at 432, 561 P.2d at 756 (holding service on the owner of record sufficient even if the record owner is not the true owner).

¶ 23 We also note that the Subdivision Public Report filed with the State of Arizona specifically listed EHV as holding title to the subdivision. That report had an effective date of August 9, 2005, which was after the Preliminary Notice was sent. Additionally, Michael Markham testified in his deposition that he did not know that any lots had actually been sold. Consequently, we agree with Markham that it followed the prescribed procedure by relying on documents prepared by or for EHV.

¶ 24 Moreover, even if EHV was not the proper party to receive the Preliminary Notice, its failure to inform Markham of this fact prevents the lot owners from asserting otherwise. Under A.R.S. § 33–992.01(I)(2), "within ten days after receipt of a preliminary twenty day notice, the owner or other interested party shall furnish the person a written statement containing ... [t]he name and address of the owner or reputed owner."

[F]ailure of the owner or other *interested party* to furnish the information required by this section ... stop[s] the owner from raising as a defense any inaccuracy of the information in a preliminary twenty day notice, provided the claimant's preliminary twenty day notice of lien otherwise complies with the provisions of this chapter.

A.R.S. § 33–992.01(J) (emphasis added). The identity of the owner of the property is included within the information that cannot be disputed.

¶ 25 An "interested party" is defined as a "party who has a recognizable stake (and therefore standing) in a matter." Black's Law Dictionary 1154 (8th ed. 2004). At the time the Preliminary Notice was served, EHV was an interested party because it still owned lots and had obligations related to each lot in the subdivision. Accordingly, it was reasonable for Markham to rely on EHV to respond to its Preliminary Notice with the names and addresses of the lot owners if EHV was not the owner. *See* A.R.S. § 33–993(I). Under these circumstances, we conclude that the lien was not invalid because of the failure to serve the lot owners.

### 3. Timeliness of the Lien

¶ 26 The trial court implicitly found that Markham's mechanic's lien was not timely recorded. Pursuant to A.R.S. § 33–993(A), Markham was required to record the lien within 120 days after "completion" of the "improvement," or within sixty days after a notice of completion has been recorded.

¶ 27 There was no "notice of completion" in this case, so the key term is "completion." Under A.R.S. § 33–993(C), "completion" means the earliest of the following events:

(1) Thirty days after final inspection and written final acceptance by the governmental body which issued the building permit for the building, structure or improvement.

(2) Cessation of labor for a period of sixty consecutive days, except when such cessation of labor is due to strike, shortage of materials or act of God.

"Completion," however, is also defined under A.R.S. § 33–993(D):

If no building permit is issued or if the governmental body that issued the building permit ... does not issue final inspections and written final acceptances, then "completion" for the purposes of subsection A of this section means the last date on which any labor, materials, fixtures or tools were furnished to the property.

¶ 28 The parties do not squarely address which definition of "completion" should apply. Markham cites to both definitions without fully differentiating between the two. The lot owners seem to assume § 33–993(C) applies. There was no written final acceptance issued in this case, but it appears that the City of Peoria issued a building permit and was willing to accept the project at some point contingent on the satisfactory performance of additional work, so neither § 33–993(C)(1) nor § 33–993(D) applies. Therefore, for the purposes of this appeal, we look to § 33–993(C)(2) as defining "completion."

¶ 29 Citing the absence of employee time sheets, the lot owners argue that the project was "completed" under A.R.S. § 33–993(C)(2) on two occasions when labor ceased for sixty consecutive days, from November 16, 2006 ("first gap") and from August 13,

2007 ("second gap"). We conclude that the facts of this case do not support their claim.

¶ 30 The ultimate question is not when Markham completed its work, but when the "improvement" was completed. A.R.S. § 33–993(A). In *S.K. Drywall, Inc. v. Developers Fin. Group, Inc.*, 169 Ariz. 345, 349, 819 P.2d 931, 935 (1991), our supreme court rejected the argument that a mechanic's lien must be filed after each building in a condominium development was completed. Because the parties contemplated a "single project," it held there was only one "improvement" under the meaning of A.R.S. § 33–993(A). *Id.* at 353, 819 P.2d at 939. Therefore, the lien was timely "filed within the statutory period dating from the time the last item of work was performed or the last material was furnished." *Id.* (citing *Gene McVety, Inc. v. Don Grady Homes, Inc.*, 119 Ariz. 482, 484, 581 P.2d 1132, 1134 (1978) ("[W]hen work is done or materials furnished, all going to the same general purpose, if the several parts form an entire whole or are so connected together as to show that the parties had it in contemplation that the whole would form but one and not distinct matters of settlement, the whole must be treated as a single contract.")).

¶ 31 Michael Markham testified in his deposition that the employee time sheets are not a complete record of the work furnished for the project because "[s]ubcontractor work isn't necessarily tracked on all the timecards," and Markham's own salaried employees who supervised the project did not report their time. In addition, he testified that some work continued during the two alleged gaps. For example, he asserts Markham continuously re-marked utilities for blue staking, which was updated every two weeks from May 2005 until January 2008.

¶ 32 With regard to the first gap, there is no evidence that the project was completed at that time. Markham met any burden of proof required of it by alleging that its lien was timely and presenting evidence that there was labor performed pursuant to the contract before, during and after the dates the lot owners argue labor ceased.

¶ 33 The lot owners argue, however, that Markham failed to show that completion had not occurred due to a cessation of labor. We disagree. Having moved for summary judgment, the lot owners had the burden to prove there was no genuine dispute of material fact. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115–16, ¶ 16, 180 P.3d 977, 980–81 (App.2008). Merely pointing to the time sheets was insufficient to rebut Michael Markham's testimony regarding the work of its salaried employees or subcontractors.

¶ 34 Moreover, Markham did not bear the ultimate burden of proving at trial that completion occurred before the date it alleged the project was finished. *Id.* at 117, ¶ 22, 180 P.3d at 982. Because the lot owners argued that Markham's lien was untimely under A.R.S. § 33–993(C)(2), they effectively raised an affirmative defense that Markham's lien was statutorily barred by the 120 day limit under A.R.S. § 33–998. Accordingly, the lot owners bore the burden to prove that all labor had ceased during the gap. *See id.* at 119, ¶ 27, 180 P.3d at 984 (holding the proponent of an affirmative defense has the burden of proving it). Markham was not responsible for disproving their affirmative defense. *Id.*

¶ 35 Even assuming, however, Markham was required to prove the project was not constructively completed earlier, we reach the same result. Michael Markham's testimony regarding the work of its salaried employees or subcontractors was sufficient to create a genuine dispute of material fact that work continued during the first gap. Therefore, summary judgment in favor of the lot owners regarding the first gap should not have been granted.

¶ 36 The second gap presents different issues. There is no dispute that the project was completed for mechanics lien purposes in late–2007 or early–2008; the dispute is over the exact date. The lot owners argue Markham's last work on the project was August 13, 2007. Therefore, they argue, applying A.R.S. § 33–993(C)(2), completion would be defined as sixty days later on October 12, 2007, and any lien would have to be recorded within 120 days, or no later than February 9, 2008. Using this date, they argue that Markham's lien was untimely because it could not have been effective before March

20, 2008, when the Notice of Correction was recorded. The lot owners also argue Markham could not file the lien in parts, so it was never effective. We address this argument in the next section. For purposes of considering the time limits in this section, we assume that Markham was able to effectively amend its lien.

¶ 37 Markham calculates the time limits differently. It asserts that its own work continued at least until January 23, 2008. Using this date, Markham calculates that "completion" did not occur until March 2008, making its filing of the Notice of Correction on March 20, 2008, well within the 120 day time limit.

¶ 38 Michael Markham testified he continued to rent and maintain barricades for the project between August 2007 and January 2008. He explained that these barricades were a necessary part of the project while Markham waited for APS to do conversion work so that it could widen the road as required under its contract with EHV. He further testified that Markham was *"finishing up our work within* those barricades." (Emphasis added.) The lot owners acknowledge that APS moved power lines relating to the project at some point, but argue this did not affect Markham's time limits because APS was not Markham's subcontractor.

¶ 39 Markham also notes that the City of Peoria would not consider the project complete or permit the barriers to be removed until the striping work was done. While the lot owners argue striping was not part of the original contract, Markham's claim that the contract was subsequently modified is supported by change requests in the record.

¶ 40 Although the lot owners argue the barricades were trivial, if Markham or others furnished any labor to complete the improvements called for in the contract during the alleged gap, the project was not yet "completed" under the statutes. Labor to complete the contract could include maintenance of the barricades and work done within them. Based on the record before us, we conclude that when labor ceased presents a question of material fact that cannot be resolved as a matter of law. *See Orme,* 166 Ariz. at 309, 802 P.2d at 1008. Therefore, we reverse the trial court's grant of summary judgment on whether the second gap was a "completion" under the statutes.

### 4. No Original Exhibit A or Proof of Mailing

¶ 41 The lot owners contend that the mechanic's lien was incomplete because Markham failed to attach a complete copy of the Preliminary Notice (defects number 4 and 5), as required by A.R.S. § 33–993(A)(6). Specifically, they contend that Original Exhibit A and a correct proof of mailing of the Preliminary Notice were not recorded with the First Lien on December 28, 2007. Although the corrective documents were subsequently provided to the lot owners in March 2008, the lot owners argue that the lien could not be amended. We disagree.

¶ 42 A claimant must strictly comply with the steps for perfection, but need only substantially comply with any particular step. *MLM Constr.,* 172 Ariz. at 229, 836 P.2d at 442. Therefore, we have held that the failure to attach a copy of a written contract to the notice and claim of lien pursuant to A.R.S. § 33–993(A)(3) did not invalidate a claim where the general terms of that contract were provided for in the written notice. *See Peterman–Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz.,* 2 Ariz. App. 321, 323–24, 408 P.2d 841, 843–44 (1966).

¶ 43 Additionally, nothing in our statutes states that a mechanic's lien cannot be corrected within the time permitted for perfecting a lien. On the contrary, A.R.S. § 33–420(C) creates liability for willfully refusing to timely correct a lien against real property in a "document of record." Although the lot owners contend that amendments of liens are generally disfavored, this limitation is more applicable "after the expiration of the time prescribed by statute for the filing of the claim." 53 Am.Jur.2d *Mechanic's Liens* § 231 (2006).

¶ 44 On review of summary judgment, we must "view the evidence in a light most favorable to the non-moving party and draw all justifiable inferences in its favor." *Thruston,* 218 Ariz. at 116, ¶ 17, 180 P.3d at

981. In this case, that requires us to assume that the project was "completed" sixty days after January 23, 2008, when the last barricades were removed. Using this date for purposes of this appeal, Markham's efforts to perfect the lien within 120 days of completion by recording the Notice of Correction on March 20, 2008, were timely.

### 5. Lis Pendens Not Notarized

¶ 45 Last, the lot owners argue that the mechanic's lien was defective because the lis pendens filed with Markham's foreclosure action was signed but not notarized. We disagree.

¶ 46 Under A.R.S. § 33–998, when an action is brought to foreclose against a mechanic's lien, a lis pendens must be recorded within five days pursuant to A.R.S. § 12–1191(A) (2003 or Supp. 2010); otherwise, the lien extinguishes after sixty days. *See HCZ Constr., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 365, ¶ 19, 18 P.3d 155, 159 (App.2001). Nothing in A.R.S. §§ 33–998 or 12–1191 requires the lis pendens to be notarized.

¶ 47 The lot owners argue the notarization requirement is in A.R.S. § 33–411(B) (2007), which states: "An instrument shall not be deemed lawfully recorded unless it has been previously acknowledged in the manner prescribed in this chapter except in the case of master mortgages as provided in § 33–415." This provision, however, applies to the recording of instruments "affecting real property" and appears in Article 2, Chapter 4 of Title 33, which governs the recording of "Conveyances and Deeds." *See* A.R.S. § 33–411(A) (2007). Also, A.R.S. § 12–1191 itself distinguishes between the filing of a lis pendens and the related "action affecting title to real property."

¶ 48 Furthermore, the purpose of a lis pendens is to give constructive notice to interested parties of litigation that may affect title to the property. A.R.S. § 12–1191(B); *Farris v. Advantage Capital Corp.*, 217 Ariz. 1, 1, ¶ 1, 170 P.3d 250, 250 (2007). Here, the lack of notarization did not prevent the lis pendens from serving its intended purpose. For these reasons, we conclude that a lis pendens filed in conjunction with an action to foreclose a mechanic's lien need not be notarized.

### B. A.R.S. § 33–420 Sanctions

¶ 49 The trial court awarded $252,000 in sanctions against Markham for recording improper documents pursuant to A.R.S. § 33–420(A) and (C). Section 33–420(A) imposes a fine of at least $5000 for claiming a lien against real property by recording a document "knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid." Section 33–420(C) imposes a minimum fine of $1000 if the person "willfully refuses to release or correct such document of record within twenty days from the date of the written request from the owner or beneficial title holder of the real property." Because damages under A.R.S. § 33–420 "are punitive in nature," the law requires scienter on the part of the wrongdoer. *Wyatt v. Wehmueller*, 167 Ariz. 281, 286, 806 P.2d 870, 875 (1991).

¶ 50 The lot owners argue that Markham knew or had reason to know that its claim was invalid under A.R.S. § 33–420(A) because it should have ascertained the actual lot owners before serving the Preliminary Notice. As discussed above, we conclude otherwise.

¶ 51 As to liability under A.R.S. § 33–420(C), the lot owners argue that Markham knew its mechanic's lien was invalid because they informed Markham that documents attached to the lien were incorrect. When informed of this Markham attempted to correct them. Under these facts, Markham's refusal to remove the claim was due to a good-faith dispute regarding the validity of its mechanic's lien.

¶ 52 Therefore, we conclude that the court erred in awarding sanctions. We need not address Markham's alternate argument that the trial court incorrectly calculated the sanctions.

### C. Attorneys' Fees

¶ 53 The trial court granted the lot owners' request for $46,789 in attorneys' fees and

costs as the prevailing party in a lien foreclosure suit, A.R.S. §§ 33–995(E) and –998(B), and because it concluded Markham recorded a wrongful document, *id.* at § 33–420(A) and (B). Because we hold that summary judgment was inappropriate, and the mechanic's lien documents were not invalid, we vacate the award. For the same reasons, we deny the lot owners' request for fees on appeal pursuant to A.R.S. §§ 33–998(B) and –420.

¶ 54 On appeal, Markham requests attorneys' fees pursuant to A.R.S. §§ 33–995(E), –998(B). In the exercise of our discretion, we deny its request without prejudice to Markham seeking fees for this appeal from the trial court if it prevails on remand. Markham also seeks attorneys' fees under A.R.S. § 33–420(A) and (C). Because these fees are only available *against* a person who files a wrongful document, Markham is not entitled to these fees against the lot owners.

¶ 55 Finally, Markham seeks its costs on appeal pursuant to A.R.S. § 12–341. Because it is the prevailing party on appeal, we award Markham costs upon its compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶ 56 For the reasons stated, we reverse the entry of summary judgment in favor of the lot owners. Because the trial court's dismissal of Markham's third-party complaint was premised on its rulings for the lot owners, we reverse that dismissal. Finally, we remand for further proceedings consistent with this decision.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and PATRICIA K. NORRIS, Judge.