IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

OCT 21 2011

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| DELMASTRO & EELLS, an Arizona corporation, | ) ) ) | |
| Plaintiff/Counterdefendant/ Appellant, | ) ) ) | 2 CA-CV 2010-0188 DEPARTMENT A |
| v. | ) ) | O P I N I O N |
| TACO BELL CORP., a California corporation and its affiliates, | ) ) ) ) | |
| Defendant/Counterclaimant/ Appellee. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20091855

Honorable Kenneth Lee, Judge

AFFIRMED

---

Berens, Kozub, Kloberdanz & Blonstein, PLC
  By William A. Kozub and Richard W. Hundley

Phoenix
Attorneys for Plaintiff/
Counterdefendant/Appellant

Snell & Wilmer L.L.P.
  By William N. Poorten, III, Andrew M. Jacobs,
    and Melissa A. Marcus

Tucson
Attorneys for Defendant/
Counterclaimant/Appellee

---

E C K E R S T R O M, Presiding Judge.

¶1       This appeal concerns a mechanic's lien recorded by appellant Delmastro &

Eells, Inc., against property owned by appellee Taco Bell Corp.[1]  After Delmastro filed a

complaint seeking to foreclose the lien, Taco Bell filed an answer and counterclaim

alleging wrongful recording of a lien and lis pendens pursuant to A.R.S. § 33-420.  On

appeal, Delmastro contends the trial court erred by granting Taco Bell's motion for

summary judgment, thereby dismissing the foreclosure count and granting relief on the

statutory counterclaim.  We affirm for the reasons set forth below.

**Factual and Procedural Background**

¶2       "In reviewing a grant of summary judgment, we view the facts and the

reasonable inferences to be drawn from those facts in the light most favorable to the party

against whom judgment was entered."  *Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz.

335, ¶ 10, 230 P.3d 718, 721 (App. 2010).  Because Delmastro has improperly cited to its

own appendix to support certain factual assertions in its opening brief, we disregard those

assertions and rely instead on Taco Bell's statement of facts and our own review of the

record.  *See State Farm Mut. Auto Ins. Co. v. Arrington*, 192 Ariz. 255, n.1, 963 P.2d

334, 336 n.1 (App. 1998); *Lansford v. Harris*, 174 Ariz. 413, 417 n.1, 850 P.2d 126, 130

n.1 (App. 1992).

¶3       Venture Development Group (VDG) owned two blocks of platted property,

specifically, Blocks 1 and 3, included in the Riverside Crossing III commercial complex

---

[1]Other entities involved in the action below are not parties to this appeal; hence, we refer to them only as needed to provide context for our discussion.  *See Albert Steinfeld & Co. v. Allison Mining Co.*, 41 Ariz. 340, 340-41, 18 P.2d 267, 267 (1933).

at 2190 W. River Road, in Tucson. In January 2008, Delmastro entered into a contract with VDG to build the Tutor Time Child Care Center, located on Block 1 of the complex, and to make other improvements. Delmastro started work on the project that same month. Taco Bell acquired title to Block 3 from VDG several months later, recording its deed on June 18, 2008.

¶4 Delmastro sent VDG three preliminary twenty-day notices pursuant to A.R.S. § 33-992.01: one on January 17, 2008; another on June 24, 2008; and the last on October 16, 2008. In all three preliminary notices, Delmastro asserted it had provided "materials and/or labor" for a building, structure, or improvement located at "2190 W. River Road" in "Tucson, Pima County, Arizona," that was "legally described as . . . Tutor Time Child Care." Delmastro acknowledges that Taco Bell was neither named in, nor served with, any preliminary notice.

¶5 Pursuant to A.R.S. § 33-993, Delmastro subsequently filed a notice and claim of lien in January 2009 against property that included Block 3. Delmastro maintains it "was not aware Defendant Taco Bell had acquired title to Block 3 until after the lawsuit had commenced." Consequently, the lien did not name Taco Bell as the owner of this parcel, and Taco Bell did not receive any notice of the lien until Delmastro filed an amended complaint seeking to foreclose against Block 3 in May 2009.

¶6 In its motion for summary judgment, Taco Bell claimed the lien against Block 3 was invalid because (1) Delmastro did not serve Taco Bell with a preliminary twenty-day notice, as required by § 33-992.01(B); (2) its preliminary notices did not sufficiently describe the jobsite and the nature of work and materials furnished, as

3

required by § 33-992.01(C); (3) Delmastro failed to name Taco Bell as the owner of the property in its notice and claim of lien filed pursuant to § 33-993; and (4) the notice and claim of lien failed to apportion value for the work performed on Block 3, as required by A.R.S. § 33-991. Taco Bell also sought damages and attorney fees for the wrongful recording of a lien and lis pendens under A.R.S. § 33-420(A). The trial court granted the motion and entered judgment pursuant to Rule 54(b), Ariz. R. Civ. P. This appeal followed.

**Discussion**

¶7          Delmastro first argues the trial court erred in entering summary judgment on the lien foreclosure count.[2] Summary judgment is appropriate when the pleadings and items in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1);

---

[2]Delmastro acknowledges the trial court's ruling was based upon the "alleged multiple defects with [Delmastro]'s preliminary twenty day lien notices and with [it]s mechanic's lien." Nevertheless, Delmastro has not provided record citations for these critical documents in either the fact section of its opening brief or the argument section, as required by Rule 13(a)(4) and (6), Ariz. R. Civ. App. P. Although Delmastro has attached an appendix to its opening brief and referred to the items within it, reference to an appendix alone fails to inform this court whether the item referred to is, in fact, included in the record on appeal pursuant to Rule 11(a)(1) and (3), Ariz. R. Civ. App. P., and it does not substitute for a citation to the record as it is numbered pursuant to Rule 11(a)(2). Such impermissible practice is an appropriate ground for this court to find an appellant's argument waived. *See Inspiration Consol. Copper Co. v. Ariz. Dep't of Revenue*, 147 Ariz. 216, 224, 709 P.2d 573, 581 (App. 1985); *Spillios v. Green*, 137 Ariz. 443, 447, 671 P.2d 421, 425 (App. 1983); *cf. Dykeman v. Ashton*, 8 Ariz. App. 327, 330, 446 P.2d 26, 29 (1968) (declining to address alleged errors when appellant failed to set forth challenged jury instructions in brief or appendix as required by appellate rules). Taco Bell, however, has not objected to this deficiency in Delmastro's brief. Accordingly, in the exercise of our discretion, we overlook the defect and will not deem the argument waived. *See Clemens v. Clark*, 101 Ariz. 413, 414, 420 P.2d 284, 285 (1966) (appellate court may entertain deficient brief on merits).

*accord Villa De Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, ¶ 5, 253 P.3d 288, 291-92 (App. 2011). Under this standard, "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense," then summary judgment should be granted. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶8 We review a grant of summary judgment de novo. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, ¶ 13, 38 P.3d 12, 20 (2002). Although the trial court did not specify its reasons for granting Taco Bell's motion here, we will affirm the ruling if it is correct on any ground. *See Jones v. Cochise Cnty.*, 218 Ariz. 372, ¶ 16 & n.5, 187 P.3d 97, 102 & n.5 (App. 2008); *Miller v. Hehlen*, 209 Ariz. 462, n.2, 104 P.3d 193, 197 n.2 (App. 2005). We address first whether the lien was valid. *See Commercial Cornice & Millwork, Inc. v. Camel Constr. Servs. Corp.*, 154 Ariz. 34, 36-37, 739 P.2d 1351, 1353-54 (App. 1987) (invalid lien warrants dismissal of foreclosure action).

Validity

¶9 Because mechanic's liens are creations entirely of statute, *Morgan v. O'Malley Lumber Co.*, 39 Ariz. 400, 404, 7 P.2d 252, 253 (1932), we require strict compliance with the statutes relating to them. *Irwin v. Murphey*, 81 Ariz. 148, 155, 302 P.2d 534, 538 (1956); *MLM Constr. Co. v. Pace Corp.*, 172 Ariz. 226, 229, 836 P.2d 439, 442 (App. 1992). When construing the provisions of these statutes, however, we interpret them liberally so as to effectuate their purposes. A.R.S. § 1-211(B); *Leeson v.*

5

*Bartol*, 55 Ariz. 160, 168, 99 P.2d 485, 489 (1940); *R & M Oxford Constr., Inc. v. Smith*, 172 Ariz. 241, 246, 836 P.2d 454, 459 (App. 1992).[3] In effect, this means a lien claimant must demonstrate substantial compliance with each statutory requirement consistent with its purpose. *See Fagerlie v. Markham Contracting Co.*, 227 Ariz. 367, ¶ 13, 258 P.3d 185, ___ (App. 2011); *MLM Constr. Co.*, 172 Ariz. at 229, 836 P.2d at 442; *Lewis v. Midway Lumber*, 114 Ariz. 426, 431, 561 P.2d 750, 755 (App. 1977).

¶10    We find Delmastro's lien was invalid, at minimum, because the descriptions of the jobsite and labor and materials it had provided in its preliminary notices were legally inadequate to secure a lien against Taco Bell's property. Under the circumstances here, a preliminary twenty-day notice is a necessary prerequisite to recording a valid lien. A.R.S. §§ 33-981(D), 33-992.01(B). A lien claimant's preliminary notice must include both "[a] general description of the labor, professional services, materials, machinery, fixtures or tools furnished or to be furnished and an

---

[3]Delmastro points out that we have often justified liberal construction on the ground that "the purpose of the mechanic's . . . lien statutes is to protect laborers and materialmen who enhance the value of other persons' property." *MLM Constr. Co.*, 172 Ariz. at 229, 836 P.2d at 442; *accord Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962); *Kerr-McGee Oil Indus. v. McCray*, 89 Ariz. 307, 311, 361 P.2d 734, 736 (1961). But not every provision the legislature creates relating to mechanic's liens is intended to benefit workers and suppliers. When the legislature first enacted A.R.S. § 33-992.01, for example, it created an additional hurdle for lien claimants without imposing any additional obligation for property owners, and the law expressly provided that "[a]ny agreement made or entered into by an owner whereby the owner agrees to waive the rights or privileges conferred upon him by this section is void." 1979 Ariz. Sess. Laws, ch. 202, § 2. The legislature's minutes establish that the bill responsible for these changes was opposed by several contractors' associations on the ground that it created too many burdens and costs for them. Ariz. State S., Minutes of Comm. on Commerce & Labor, 34th Leg., 1st Reg. Sess., at 3, 4 (1979). Later amendments to § 33-992.01 reflect legislative attempts to balance the interests of the competing groups affected by this statute.

6

estimate of the total price thereof," § 33-992.01(C)(1), as well as "[a] legal description, subdivision plat, street address, location with respect to commonly known roads or other landmarks in the area or any other description of the jobsite sufficient for identification." § 33-992.01(C)(4).

¶11    We agree with both parties that *Westinghouse Electric Supply Co. v. Western Seed Production Corp.*, 119 Ariz. 377, 580 P.2d 1231 (App. 1978), establishes the standard to be used for determining the adequacy of these descriptions. There, we held that "the test to be applied is whether a stranger to the underlying transaction, based upon the description contained in the notice and claim of lien and [his or her] general knowledge of the area, could ascertain the property to which the lien attached." *Id.* at 379, 580 P.2d at 1233. *Westinghouse* specifically addressed the description requirement of former § 33-993 and did not prescribe a standard for the subsequently enacted § 33-992.01(C). 119 Ariz. at 379, 580 P.2d at 1233; *see also* 1966 Ariz. Sess. Laws, ch. 63, § 20. Nevertheless, the operative language of these provisions is essentially the same,[4] and logic compels extending the *Westinghouse* standard to the descriptions within a preliminary lien notice.

¶12    The descriptions required by § 33-992.01(C), therefore, must be sufficient to allow a stranger to the transaction to identify both what the lien claimant has provided and to which specific property any future lien will attach. In this way, a court may assess

---

[4]*Westinghouse* construed language in the former version of § 33-993 requiring a notice of lien to include "[a] description of the lands and improvements to be charged with a lien, sufficient for identification." 1966 Ariz. Sess. Laws, ch. 63, § 20.

whether claims are precluded under § 33-992.01(E).[5]  In addition, the recipient of a

preliminary notice can assess the accuracy of the information within it, *see* § 33-

992.01(J), and comply with the disclosure obligations specified in § 33-992.01(I).[6]

---

[5]This provision establishes that a person "is entitled to claim a lien only for such labor, professional services, materials, machinery, fixtures or tools furnished within twenty days prior to the service of the notice and at any time thereafter." § 33-992.01(E).

[6]This subsection, which applies to people who receive either a request for information or a preliminary twenty-day notice, provides as follows:

> Within ten days after receipt of a written request from any person or the person's agent intending to file a preliminary twenty day notice, which request shall identify the person, the person's address, the jobsite and the general nature of the person's labor, professional services, materials, machinery or tools to which the preliminary twenty day notice shall apply, or within ten days of the receipt of a preliminary twenty day notice, the owner or other interested party shall furnish the person a written statement containing the following information:

> 1. The legal description, subdivision plat, street address or location with respect to commonly known roads or other landmarks in the area, or any other description of the jobsite sufficient for identification.

> 2. The name and address of the owner or reputed owner.

> 3. The name and address of the original contractor or reputed contractor.

> 4. The name and address of the construction lender, if any, or reputed construction lender.

**¶13** Such descriptions further the general purpose of § 33-992.01. Like the California statute on which it was patterned, our pre-lien notice statute

> "was intended as a means of identifying . . . unknown persons, who are potential lien claimants, so that meaningful communication could be had among the property owner, lending institution and general contractor to insure timely payment of these persons' claims and avoid[] . . . costly work stoppages, mechanics' lien foreclosure sales, and double payments by the owner."

*Schrader Iron Works, Inc. v. Lee*, 103 Cal. Rptr. 106, 111 (Ct. App. 1972), *quoting* 51 Op. Cal. Att'y Gen. 69; *see also MLM Constr. Co.*, 172 Ariz. at 229-30, 836 P.2d at 442-43. "The purpose of the statutory notice requirement is to give the owner advance information of the identities of any unpaid claimants who may perfect liens against his property if their debts remain unsatisfied." *Truestone, Inc. v. Simi W. Indus. Park II*, 209 Cal. Rptr. 757, 761 (Ct. App. 1984). This is the same basic function served by our long-standing notice requirement in § 33-993: "giv[ing] the property owner an opportunity to protect himself . . . and giv[ing] him time to investigate the claim." *Lewis*, 114 Ariz. at 432, 561 P.2d at 756. It therefore is appropriate to extend the *Westinghouse* standard to § 33-992.01(C).

**¶14** By this measure, Delmastro's preliminary notices plainly were insufficient. In all three preliminary notices, Delmastro asserted it had provided "materials and/or

---

5. If any payment bond has been recorded pursuant to § 33-1003, a copy of the bond and the name and address of the surety company and bonding agent, if any, providing the payment bond.

§ 33-992.01(I).

9

labor" for a building, structure, or improvement located at "2190 W. River Road" that was "legally described as . . . Tutor Time Child Care." Delmastro contends these notices "provided both a description of its labor and of the real property involved." As to its first contention, we observe that merely indicating labor has been performed does little to describe such labor, and failing to specify whether labor or materials were furnished accomplishes even less. But we need not decide what qualifies as adequate description solely under § 33-992.01(C)(1) to resolve this appeal.

¶15      The critical deficiency here is that the three preliminary notices did not describe any work being performed on Block 3 so as to alert a notice recipient that a lien might attach to this property. Notice recipients were apprised that work was being performed on Block 1 of the commercial center located at 2190 W. River Road—the Tutor Time Child Care building. But nothing in the preliminary notices provides any indication that other properties were affected or that notice recipients had any obligation to supply information relating to other parcels within the shopping complex. *Cf. Smith Pipe & Steel Co. v. Mead*, 130 Ariz. 150, 150-51, 634 P.2d 962, 962-63 (1981) (notice and claim of lien describing parcel adjacent to worksite did not substantially comply with legal description requirement of § 33-993(A)(1)). Given the bare-bones assertions in the preliminary notices, there was no basis for a notice recipient to clarify the ownership of Block 3, for example, *see* § 33-992.01(I)(2), (J), or to amend the description of the jobsite. *See* § 33-992.01(I)(1), (J). In fact, the notice recipient here did neither, and, as a result, Taco Bell never received notice of Delmastro's claims against its property until Delmastro sought to foreclose its lien. Contrary to Delmastro's assertion, the sum total of

10

information provided in the preliminary notices did not reveal that its labor and jobsite involved property owned by Taco Bell. Thus, substantial compliance with § 33-992.01(C)(1) and (4) was not achieved.

¶16 Delmastro maintains the property descriptions within the three preliminary notices were adequate because they included the street address that encompassed all blocks of the commercial subdivision. We do not dispute that our preliminary notice statute allows the property subject to the notice to be described in different ways, including by way of a street address. But under § 33-992.01(C)(4), any such description must be "sufficient for identification" of the jobsite, meaning it must inform a stranger to the transaction about the specific property to which any future lien will attach. Here, all of Delmastro's preliminary notices specified work on "Tutor Time Child Care" which was "located at . . . 2190 W. River Road." Given that specificity, no reasonable person would conclude Delmastro's jobsite included the entire subdivided commercial complex at 2190 W. River Road—even those blocks where Tutor Time Child Care is not located. The descriptions in the preliminary notices, therefore, were insufficient as to Block 3.

¶17 Delmastro counters that "under . . . § 33-992.01(J), if the contents of the preliminary twenty day lien notice are insufficient, the owner is barred from raising this as a defense unless the owner or other interested party previously sent a writing to the claimant to correct the contents of the preliminary twenty day notice," which did not occur here. Yet this argument ignores an important distinction between inaccuracy and insufficiency. Subsection (J) provides, in relevant part:

11

> Failure of the owner or other interested party to furnish the information required by this section does not excuse any claimant from timely giving a preliminary twenty day notice, but it does stop the owner from raising as a defense any inaccuracy of the information in a preliminary twenty day notice, provided the claimant's preliminary twenty day notice of lien otherwise complies with the provisions of this chapter.

§ 33-992.01(J). Rather than being "inaccura[te]," and thus subject to correction, Delmastro's preliminary notices simply were insufficient to alert recipients to the fact that it had worked on and intended to file a lien against Block 3. Although in some cases the distinction might be less clear, the defect in this case is easily characterized. *See MLM Constr. Co.*, 172 Ariz. at 230, 836 P.2d at 443. Delmastro did not comply substantially with § 33-992.01(C), as noted above, because its preliminary notices did not serve the purposes of the statute so as to trigger disclosure obligations under § 33-992.01(I).

¶18 Delmastro emphasizes that VDG still owned Block 3 when the first preliminary notice was served and relies on *Fagerlie v. Markham Contracting Co.*, 227 Ariz. 367, 258 P.3d 185 (App. 2011), to support the proposition that VDG could waive challenges to the preliminary notices on behalf of Taco Bell. Yet we need not address the merits of *Fagerlie*'s alternative holding regarding waiver by "interested" third parties, *see id.* ¶¶ 24-25, as that case is readily distinguishable. There, the lien claimant/contractor correctly described all the property within a residential subdivision that was to be charged with a lien in its preliminary notice. *Id.* ¶¶ 2-3, 22. Here, by contrast, the lien claimant failed to properly identify the property to be charged with a lien. Even assuming that *Fagerlie* correctly concluded "interested" third parties can waive rights for property

12

owners pursuant to § 33-992.01(J), such waiver cannot occur when the third party has not been provided notice of which property is to be charged with the lien.

¶19      Delmastro also maintains Taco Bell "was not an innocent bystander" in that it either knew or should have known that Delmastro was improving the property that Taco Bell acquired. Pointing to Taco Bell's purchase agreement for Block 3, Delmastro claims "Taco Bell knew work was being performed to benefit the parcel it was acquiring and that somebody, be it [Delmastro] or another contractor, was improving its parcel and would have lien rights if not paid." From this, Delmastro concludes that Taco Bell "could have protected itself through a simple inquiry directed to the seller as to who was performing the work and/or requiring proof of payment." In a related argument, Delmastro contends "there was a triable issue of fact as to whether Taco Bell Corp. independently knew about the project and where it was performed."

¶20      We reject these arguments, however, because the very purpose of the preliminary notice is to clarify in writing what is happening with a project and who is seeking payment. Notice recipients are not required to read the minds of lien claimants or track the happenings on or near their property. As § 33-992.01(J) illustrates, even with the waiver provision of this subsection in place, lien claimants are still required to "compl[y] with the provisions of th[e] chapter" relating to mechanic's liens. The duty rests with a lien claimant to supply the basic information in § 33-992.01(C) in order to signal his or her intentions and allow the preliminary notice process to work.

¶21      The *Westinghouse* standard reflects this burden by requiring that a description apprise "a stranger to the . . . transaction" of the property to which any lien

13

will attach. 119 Ariz. at 379, 580 P.2d at 1233. "'The notice must be sufficient in itself to identify the property . . . and . . . [outside] evidence . . . cannot be received to supply a deficiency in that regard.'" *Id.* at 380, 580 P.2d at 1234, *quoting Hurley v. Tucker*, 112 N.Y.S. 980, 984 (App. Div. 1908) (first omission in *Westinghouse*). When a prospective claimant fails to discharge this duty, a triable issue of fact is not thereby created as to whether a property owner's knowledge obviated the need for such a description. This is because neither a notice recipient nor a property owner is charged with knowledge outside the preliminary notice. And actual knowledge of an improvement or construction debt does not relieve a lien claimant of the duty to provide a preliminary notice that complies with § 33-992.01(C). *Cf. Westinghouse*, 119 Ariz. at 379, 580 P.2d at 1233 ("[T]he fact that the owner had knowledge that the description set forth applied to his property is not controlling.").

¶22    Delmastro interprets *Westinghouse* as holding that "a fact-based, case-by-case analysis is required to determine whether a description of the jobsite is sufficient." It concludes from this premise that the trial court could not have found "the descriptions in the preliminary twenty day notice . . . , as a matter of law, to be insufficient," at least not "without any evidence provided by Taco Bell . . . to show the descriptions were insufficient or confusing for either its agents or for a stranger." But this conclusion simply does not follow from the premise, as *Westinghouse* demonstrates.

¶23    There, the parties had provided a joint statement of facts to support their cross-motions for summary judgment, and the trial court had entered judgment in favor of the lease holder, Western Seed, denying the validity of Westinghouse's lien on the

14

property. *Westinghouse*, 119 Ariz. at 378, 580 P.2d at 1232. Applying the stranger-to-the-transaction standard on appeal, this court held Westinghouse's description of the property was sufficient as a matter of law to perfect a valid lien, and we reversed the trial court's ruling, directing it to proceed with the foreclosure. *Id.* at 380-81, 580 P.2d at 1234-35.

**¶24**     *Westinghouse* thus illustrates that because the sufficiency of a description is measured by an objective standard that looks to the notice itself, trial courts may draw a legal conclusion on this issue on a motion for summary judgment. The simple fact that a sufficiency determination will vary case by case, depending upon the content of the preliminary notice and the features of the property concerned, does not mean the sufficiency of a preliminary notice is always a question of fact necessitating a trial, nor does it place a burden of production on a property owner.

**¶25**     In sum, Delmastro's preliminary notices did not substantially comply with § 33-992.01(C) because the descriptions therein were insufficient to further the purpose of the statute. *See Fagerlie*, 227 Ariz. 367, ¶ 13, 258 P.3d at ___. The trial court therefore correctly concluded that the lien was invalid and did not err by granting summary judgment in favor of Taco Bell and dismissing the lien foreclosure count against it.

Knowledge

**¶26**     Delmastro next argues that the trial court erred in granting summary judgment in favor of Taco Bell on its statutory counterclaim. Delmastro contends that, even assuming its lien was invalid, "neither the recording of it nor of the notice of lis

15

pendens were actionable under A.R.S. § 33-420(A) unless [Delmastro]'s representatives knew or had reason to know the documents were groundless." Section 33-420(A) affords relief when

> [a] person purporting to claim an interest in, or a lien or encumbrance against, real property, . . . causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid.

We focus here on the invalidity of the lien rather than the lis pendens, as this issue alone is dispositive.

¶27 Taco Bell was entitled to judgment under § 33-420(A) if it could demonstrate the party recording the lien had "reason to know the document is . . . invalid." For the reasons explained above, Delmastro had reason to know its preliminary notices contained legally deficient descriptions that were insufficient to secure a lien against Taco Bell's property. By extension, therefore, Delmastro had reason to know that the lien it recorded was invalid. *See* A.R.S. § 33-992.01(B) (service of written preliminary twenty-day notice "a necessary prerequisite to the validity of any claim of lien").

¶28 Delmastro counters that the objective invalidity of a lien, standing alone, is an insufficient basis to justify summary judgment under the statute. Relying on *Pence v. Glacy*, 207 Ariz. 426, 87 P.3d 839 (App. 2004), and *Coventry Homes, Inc. v. Scottscom Partnership*, 155 Ariz. 215, 219, 745 P.2d 962, 966 (App. 1987), Delmastro maintains that because the "'reason to know' element of A.R.S. § 33-420(A)" is a question of fact

16

to be determined on a case-by-case basis, the issue cannot be resolved by summary judgment. This argument misapprehends the law regarding § 33-420(A), although we acknowledge there is some lack of clarity in pertinent authority on this point.

¶29    Ordinarily, a showing that a recorded instrument is invalid is the best evidence that whoever recorded the instrument had reason to know it was invalid. It is both a long-standing rule and a fundamental principle of our system of government that all people of sound mind are presumed to know the law. *State v. Soltero*, 205 Ariz. 378, ¶ 7, 71 P.3d 370, 372 (App. 2003); *see also Conway v. State Consol. Publ'g Co.*, 57 Ariz. 162, 171, 112 P.2d 218, 222 (1941); *Moore v. Meyers*, 31 Ariz. 347, 356, 253 P. 626, 629 (1927); *Newman v. Fid. Sav. & Loan Ass'n*, 14 Ariz. 354, 359, 128 P. 53, 55 (1912). Parties recording liens, no less, are charged with knowledge of the laws pertaining to them. *See Guarriello v. Sunstate Equip. Corp.*, 187 Ariz. 596, 597-98, 931 P.2d 1106, 1107-08 (App. 1996); *Hatch Cos. Contracting v. Ariz. Bank*, 170 Ariz. 553, 559, 826 P.2d 1179, 1185 (App. 1991). In addition, given the "reason to know" language within § 33-420(A), parties are charged with drawing certain factual inferences germane to their liens. As we stated in *Coventry Homes*:

> "'Reason to know' means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist."

155 Ariz. at 219, 745 P.2d at 966, *quoting* Restatement (Second) of Torts § 12 cmt. a (1965); *accord Hatch*, 170 Ariz. at 559, 826 P.2d at 1185.

17

¶30 In adopting this "reason to know" standard from the Restatement, *Coventry Homes* perhaps overlooks that it applies solely to factual inferences and probable assumptions made from the facts. As the Restatement explains: "Both the expression 'reason to know' and 'should know' are used with respect to existent facts." Restatement of Torts § 12 cmt. a. An example of a fact bearing upon the validity of a lien is whether a property owner may be "found within the county" for purposes of serving notice under A.R.S. § 33-993(A). Whether a party has "reason to know" the relevant law, by contrast, is not a factual inquiry under most circumstances. Indeed, if it were, it would be an inquiry lacking almost any guidance, and one producing wildly disparate results. *Pence* appears to follow this overbroad reasoning, suggesting a defendant's lack of "particular or specialized knowledge" of the relevant law is a factual issue that may allow him to escape liability under § 33-420(A). 207 Ariz. 426, ¶ 16, 87 P.3d at 842. But when parties have reason to know the law, knowledge with which each party must be charged, we can only conclude that, under most circumstances, they have reason to know when they fail to comply with it.

¶31 Consequently, reason to know of the invalidity of a lien generally follows from the fact that the lien is facially invalid. Section 33-420(A) does not require that a defendant always be cognizant of the invalidity of a lien. And even if *Coventry Homes* suggests the contrary under its particular facts, 155 Ariz. at 219, 745 P.2d at 966, a party must have more than a subjective, good faith belief in the propriety of its recording to escape liability under § 33-420(A). *Hatch*, 170 Ariz. at 559, 826 P.2d at 1185. Thus, our courts routinely will uphold the grant of summary judgment on claims under § 33-

18

420(A). *E.g.*, *Webber v. Grindle Audio Prods., Inc.*, 204 Ariz. 84, ¶¶ 7, 27-29, 60 P.3d 224, 226, 230 (App. 2002); *Guarriello*, 187 Ariz. at 598, 931 P.2d at 1108; *Hatch*, 170 Ariz. at 554, 559, 826 P.2d at 1180, 1185.

¶32 Under certain circumstances, of course, the fact that an invalid instrument was recorded is insufficient for liability to arise under the statute. For example, as our supreme court established in *Wyatt v. Wehmueller*, 167 Ariz. 281, 287, 806 P.2d 870, 876 (1991), damages may not be recovered from a client when his attorney filed a lis pendens without the client's knowledge or consent.

¶33 *Pence* is another special case. There, Pence sought a loan from her employer, Glacy, which he reluctantly made on the condition that she secure it with a deed of trust on her property. 207 Ariz. 426, ¶ 2, 87 P.3d at 839. Pence signed the deed herself but did not obtain the signature of her husband, as required by our community property statutes, and she later asserted a wrongful lien claim against Glacy on the basis of this defect. *Id.* ¶¶ 3, 6, 8. After a bench trial, the court concluded Glacy was not liable for recording an invalid lien, and we upheld this determination on appeal. *Id.* ¶¶ 1, 8.

¶34 *Pence* stands for the proposition that when the party asserting a claim under § 33-420(A) has participated in creating the document in question, acted as though it were valid, and benefited from the defendant believing it to be valid, whether the defendant had "reason to know" the document was invalid presents a factual question. It is not the case, "[a]s a matter of law, . . . that the presumption of knowledge of the law provides the scienter requirement under the statute." *Pence*, 207 Ariz. 426, ¶ 16, 87 P.3d at 842. This is because the purpose of § 33-420 is to protect property owners and deter

19

wrongful conduct, *Wyatt*, 167 Ariz. at 286, 806 P.2d at 875; it is not designed to give property owners a windfall when documents they have reviewed and agreed to happen to be invalid.

¶35    We acknowledge that language in *Pence* could be interpreted as suggesting ignorance of the law or a subjective, good faith belief in the validity of an instrument may serve as a defense to a wrongful lien claim under § 33-420(A). But we view that decision to be far more limited based on its facts. Although we have echoed language from *Wyatt* that "the law requires scienter on the part of the wrongdoer," *Fagerlie v. Markham Contracting Co.*, 227 Ariz. 367, ¶ 49, 258 P.3d 185, ___ (App. 2011), such statements, in order to be harmonized with our case law and the language of § 33-420(A), must be regarded as shorthand. At times, a defendant's lack of knowledge will defeat a claim under § 33-420(A). Yet "having reason to know" is not synonymous with "knowing" a lien is invalid, for such a construction would rewrite the terms of § 33-420(A). Nothing in § 33-420(A) relieves a defendant of the general obligation to discover and comply with the laws relating to liens, particularly when it attempts to impose and enforce one. Nor does the "reason to know" requirement shield a defendant from liability or necessarily create a question of fact sufficient to withstand summary judgment when the party's ignorance of the invalidity of a lien arose from the party's own failure to take basic steps to assure its validity.

¶36    In sum, the factual nature of the "reason to know" requirement in § 33-420(A) will depend upon why the recorded document is invalid and the circumstances of a particular case. Our observation in *Williams v. A.J. Bayless Markets, Inc.*, 13 Ariz.

App. 348, 353, 476 P.2d 869, 874 (1970), applies equally to this statute: "These situations may, in a particular case, be fact questions and in another case may be resolved as a matter of law."

¶37 Although we acknowledge a defendant's reason to know of the invalidity of a lien might, at times, present a factual issue to be resolved at trial, we agree with the trial court that we are not presented with that situation here. Delmastro essentially claims it did not have reason to know its lien was invalid because no one informed it of this fact or supplied it with the information necessary to correct its preliminary notices.[7] Yet it was Delmastro's duty under the express language of § 33-992.01(C) to provide a description of the work it had performed, as well as a description of the property that had benefited from that work and might be charged with a lien. Both those facts were well within Delmastro's own knowledge. Because there was no special circumstance creating a disputed factual issue, the trial court properly found Delmastro had reason to know its lien against Taco Bell's property was invalid, and the court did not err by granting summary judgment in favor of Taco Bell on its counterclaim pursuant to § 33-420(A). *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

## Disposition

¶38 For the foregoing reasons, we affirm the trial court's judgment. Taco Bell has requested an award of attorney fees and costs on appeal pursuant to A.R.S. §§ 33-

---

[7]Delmastro does not address specifically the issue of whether it had reason to know the lien was invalid based on the inadequate descriptions in its preliminary notices; rather, it focuses its argument on the issue of ownership of the property, emphasizing that its "agents testified they did not know . . . Taco Bell Corp. owned Block 3 until after the litigation had commenced."

21

420(B), 33-995(E), 33-998(B) and Rule 21, Ariz. R. Civ. App. P.  We grant the request, subject to Taco Bell's compliance with Rule 21.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge

22