NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

WHITESTAR SOLUTIONS, LLC, et al., *Plaintiffs/Appellants*,

*v.*

MEDMEN ENTERPRISES, INC., *Defendant/Appellee*.

No. 1 CA-CV 22-0738
FILED 12-05-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-003335
The Honorable Dewain D. Fox, Judge
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Fennemore Craig, P.C., Phoenix
By Louis D. Lopez, Charles E. Markle
*Counsel for Plaintiffs/Appellants Whitestar Solutions, LLC and Adakai Holdings, LLC*

Snell & Wilmer, L.L.P., Phoenix
By Jennifer L. Hadley Catero, Steven D. Jerome, Emily Gildar Yaron, James G. Florentine
*Counsel for Defendant/Appellee MedMen Enterprises, Inc.*

_____

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

_____

**B A I L E Y**, Judge:

**¶1** Whitestar Solutions, LLC ("Whitestar") appeals the superior court's summary judgment in favor of MedMen Enterprises, Inc. ("MedMen"). In its second amended complaint, Whitestar alleged that MedMen had fraudulently induced Whitestar to contract to sell part of its business to MedMen by misrepresenting the nature of restrictive legends on MedMen's securities. Because no admissible evidence shows MedMen made material misrepresentations, and Whitestar shows no injury from any alleged misrepresentation, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Whitestar owned Omaha Management Services, LLC ("Omaha"), the management company for EBA Holdings, Inc. ("EBA"), which operates a cannabis cultivation and dispensary business in Mesa and Scottsdale. EBA does business as Monarch.

**¶3** MedMen is a Canadian corporation with its securities publicly traded on the Canadian Securities Exchange. Since at least May 2018, MedMen engaged Odyssey Trust Company ("Odyssey") as its securities transfer agent.

**¶4** In September 2018, Whitestar and others[1] entered a "Membership Interest Purchase and Sale Agreement" ("the Agreement") with MedMen for Whitestar to sell or otherwise transfer its ownership in Omaha and its interests (including the Monarch business) to MedMen.[2]

_____

[1] The others included (1) Adakai Holdings, LLC ("Adakai"), a wholly owned subsidiary of Whitestar and Whitestar's manager, (2) Dustin Johnson, the founder/managing partner of Whitestar, member/manager of Adakai, and board member of EBA, and (3) Michael Johnson.

[2] The Agreement provided that Arizona has exclusive jurisdiction in any legal suit arising out of the Agreement, and it provided for venue in

Under the Agreement, the purchase price included a number of MedMen's Class B Public Shares ("the Closing Shares").[3]  The Agreement required MedMen to "issue and deliver" the Closing Shares to Whitestar "free and clear of all Encumbrances[4] and restrictions on transfer."[5]  However, MedMen's shares were unregistered securities, and Whitestar understood that MedMen would issue those securities with a restrictive legend—a statement on the certificate identifying restrictions on transferability—affixed to the shares.

¶5        In October 2018, MedMen's then-Head of Investor Relations, Stephanie Van Hassel, confirmed with Whitestar's representative that the Closing Shares were foreign stock bearing a restrictive legend pursuant to the United States Securities Act of 1933 ("the 1933 Act"), and that Whitestar's members could have the legend removed for purposes of effectuating a sale pursuant to an exemption, Rule 904[6] of Regulation S:

> The shares you will receive will be restricted in the sense that
> they have a legend.  They will not be restricted in terms of a

---

Maricopa County.  It also provided that the Agreement itself "shall be governed by and construed in accordance with" Delaware law.

[3]      The purchase price was also subject to increase by a multi-tiered Earn-Out Payment, an additional payment of Class B Public Shares contingent on gross revenues over a specified period.

[4]      The Agreement broadly defined an "encumbrance" as "any charge, claim, community property interest, pledge, condition, equitable interest, lien (statutory or other), option, security interest, mortgage, easement, encroachment, right of way, right of first refusal, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership."

[5]      In discussing Earn-Out Payments, the Agreement further provided that the Class B Public Shares issued to Whitestar would be "free and clear of all Encumbrances and restrictions on transfer other than resale restrictions pursuant to United States security laws."

[6]      *See* 17 C.F.R. § 230.904.  According to Whitestar, "Rule 904 provides a safe harbor for the removal of the restrictive legend before the expiration of the one-year lockup for an offshore sale of unregistered securities."  Rule 904 is part of the section referred to as "Regulation S," located at 17 C.F.R. §§ 230.901 to -905.  There is no specific timing component to Rule 904.

lock up period. They are restricted with the 1933 Act legend until you decide to sell your shares. At that point, you are able to sell through an exemption called Rule 904 of Regulation S and your broker will be able to assist you with this. They will provide you with the form that you will need to complete to certify that you are selling into Canada using this exemption. Unfortunately, US securities laws do not allow MedMen to issue shares to US residents without this restriction when the shares are not registered with the SEC.

Whitestar did not object to the Closing Shares coming with the restrictive legend, and although Whitestar could have terminated the transaction before closing if it believed MedMen made inaccurate representations or warranties, it did not do so.

¶6          Closing occurred on December 3, 2018. Although the Agreement provided for the Closing Shares to be issued to Whitestar, Whitestar directed MedMen to instruct Odyssey to issue the Closing Shares directly to Whitestar's members ("the Share Recipients").

¶7          MedMen previously authorized Odyssey to remove the 1933 Act legend in connection with the subsequent sale and transfer of its Closing Shares. Odyssey's representative advised Van Hassel that "if we are going to remove the legend without a concurrent transfer, we should have the broker and the shareholder undertake to return the shares to us if the sale outside of the US does not imminently occur for any reason." Accordingly, the representation letters prepared by Odyssey and authorized by MedMen provided that any Closing Shares not sold would be "promptly" returned to Odyssey for re-application of the restrictive legend.[7]

¶8          Soon after, Whitestar's Dustin Johnson sought to have the legend removed from all his recently acquired Closing Shares, and he contacted FineMark National Bank and Trust ("FineMark") to assist him. In February 2019, FineMark's Jennifer Garcia sent him an email advising that she had learned from "our back office who is the transfer agent for our incoming assets" that the Closing Shares "have to be sold on the Canadian

---

[7]     These "representation letters," which were to be used when the Share Recipients sold or transferred their Closing Shares, included forms entitled "Form of Declaration of Reliance Upon Regulation S," a Share Recipient's declaration, and "Affirmation by Seller's Broker-Dealer of Reliance on Regulation S," the Share Recipient's broker's affirmation.

Stock exchange within 30 days of the legend removal." Garcia further advised that if Johnson had the legends removed on all his shares, then "we would need to have ALL of them sold within 30 days of removing the restriction at Odyssey" and they would need to "have everything ready to go before the restrictive legend is removed." This was the first time Johnson learned of the purported 30-day re-legending requirement, as no such requirement was specified in MedMen's instruction letters to Odyssey or applied to the Closing Shares.

¶9 Over the next few months, the parties tried to resolve the alleged 30-day re-legending issue. Ultimately, MedMen determined that, although some securities brokers—and perhaps even Odyssey—believed 30 days was a reasonable period, that was not a restriction placed by MedMen or originated by Odyssey, and there never was a 30-day resale/re-legending requirement (or any requirement of a specific number of days) in MedMen's representation letters or in any legend removal paperwork executed by the Share Recipients.

¶10 Meanwhile, the Share Recipients, including Dustin Johnson, successfully removed the 1933 Act legend from their Closing Shares within days after executing and submitting their representation letters. Further, they have either sold their Closing Shares or held them without having the legend reapplied.

¶11 Over time, the value of the Closing Shares declined and, in March 2020, Whitestar sued MedMen in superior court for fraudulent inducement, breach of contract, injunctive relief, declaratory relief, and appointment of a receiver. Whitestar alleged that MedMen fraudulently induced it to enter and close on the Agreement by promising to deliver "freely transferable/tradeable shares" to Whitestar, but instead had delivered "encumbered" stock (referring to the restrictive legend and the purported 30-day re-legending requirement).

¶12 The case was assigned to Judge Danielle Viola. At the beginning of discovery, Whitestar applied for the appointment of a receiver to protect its interests and for a temporary restraining order and preliminary injunction, largely to enjoin MedMen from selling Monarch. Judge Viola held an August 2020 evidentiary hearing and took the matter under advisement. She later denied the application to appoint a receiver but granted Whitestar's application for a preliminary injunction upon Whitestar's posting of a bond after concluding Whitestar demonstrated a strong likelihood of success, there was a possibility of irreparable injury, and the equities and public policy favored Whitestar. She also cautioned,

however, that her preliminary conclusions were "[b]ased on the limited evidence presented," and she restricted the injunction to the sale or disposition of "assets MedMen acquired under the Asset Purchase Agreement." Whitestar never posted the bond.

¶13 The case was reassigned to Judge Daniel Martin. In April 2022, MedMen moved for summary judgment.

¶14 In May 2022, Judge Martin granted summary judgment in favor of MedMen and against Whitestar on all counts, finding and concluding in part as follows:

Preliminarily, the Court finds that Whitestar has standing to prosecute its claims. But, on the record presented, the Court further finds that no reasonable juror could conclude that Whitestar is entitled to relief on any of those claims. At the root of this litigation is Whitestar's assertion that MedMen fraudulently induced Whitestar to enter into the Purchase and Sale Agreement that underpins the dispute between the parties. More specifically, Whitestar urges that the closing shares were subject to an undisclosed encumbrance to the effect that "the shares had to be returned if not imminently sold after the [1933 Act] legend is removed[.]" There is no dispute that Whitestar was aware that the shares would be issued subject to a 1933 Act legend; by its Complaint and subsequent submissions to the Court, Whitestar cuts from whole cloth an argument that it somehow was unaware of the nature of those restrictions or the manner in which the shares could subsequently be sold (i.e., pursuant to the Regulation S/Rule 904 safe harbor). Nor does Whitestar adduce any probative evidence of the encumbrance it alleges to have constituted the fraud (i.e., the re-legending period); the blanket authorization letter on which Whitestar relies does not say this. The mass of information submitted by the parties notwithstanding, there is simply no evidence that the closing shares had to be sold within a 30-day window once the restrictive legend was removed, and therefore no evidence of the encumbrance posited by Whitestar in support of its claims. Further to the foregoing, the Court agrees with MedMen that there is no evidence in the record of any damages proximately caused by the alleged re-legending requirement.

The Court's findings and conclusions as to Whitestar compels the grant of summary judgment to MedMen on Counts One (fraudulent inducement), Two (breach of contract), Three (injunctive relief), and Six (receivership and injunction) of the Second Amended Complaint. As to Count Four (declaratory relief as to the earn-out shares), the record shows that MedMen issued the earn-out shares, and the Court agrees with MedMen that Whitestar "has failed to articulate any [remaining] dispute or additional obligation owed under the [Purchase and Sale Agreement] as to the Earn-Out Shares."

. . . .

A grant of summary judgment is the exception, not the rule. Here, the parties have created a massive record which, from its sheer bulk alone, would suggest that a genuine issue of material fact must exist. However, at its core, this case revolves around a relatively uncomplicated question of an alleged misrepresentation for which no supporting evidence exists. Once the weakness of that foundation is exposed, the remaining structure collapses around it. Summary judgment will be granted in favor of MedMen.

(Record citations omitted.)

¶15          Judge Martin later denied Whitestar's motion for reconsideration. In October 2022, the superior court (Judge Dewain Fox) entered final judgment in MedMen's favor.

¶16          We have jurisdiction over Whitestar's timely appeal under Arizona Revised Statutes sections 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

### I.     Standing

¶17          As a threshold issue, we address Whitestar's standing to bring this lawsuit before the superior court. Whitestar argues that Judge Martin's conclusion that "there is no evidence in the record of any damages proximately caused by the alleged re-legending" conflicts with his preliminary finding that "Whitestar has standing to prosecute its claims," and its argument raises the question whether standing exists. MedMen contends that standing is a jurisdictional requirement and argues we may

*sua sponte* determine if Whitestar lacked standing to prosecute its claims. *See, e.g., Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 851–52 (Del. Ch. 2020).

¶18            "The issue in Arizona is whether, given all the circumstances in the case, [an organization] has a legitimate interest in an actual controversy involving its members and whether judicial economy and administration will be promoted by allowing representational appearance." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6 (1985).  Those elements are met here.

¶19            "The issue of standing [in Delaware courts] is concerned only with the question of *who* is entitled to mount a legal challenge and not with the merits of the subject matter in controversy." *Dover Hist. Soc'y v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (citation and internal quotations omitted).  Whitestar alleged the elements necessary to establish standing under Delaware law: (1) it and/or the Share Recipients had suffered an injury in fact from the loss of the Omaha ownership/membership interests conveyed to MedMen in reliance on MedMen's representations, (2) a causal connection existed between the alleged injury and MedMen's alleged conduct representing that MedMen would distribute unencumbered shares, and (3) the alleged injury could be redressed by a favorable decision awarding either recission or recessionary damages if Whitestar prevailed. *See id.*; *Burkhart*, 250 A.3d at 852.  It appears that, in preliminarily finding standing, Judge Martin implicitly recognized this.  We conclude the requirements for standing were met under both Arizona and Delaware law, and Judge Martin did not err in concluding that Whitestar had standing to pursue its claims.

## II.    The Merits

¶20            Whitestar argues the superior court erred in granting summary judgment in favor of MedMen.  We disagree.

### A.  Standard of Review & Applicable Law

¶21            We review the grant of summary judgment de novo, while viewing the facts and reasonable inferences therefrom in the light most favorable to the non-moving party. *See, e.g., Espinoza v. Schulenburg*, 212 Ariz. 215, 216, ¶ 6 (2006).  Summary judgment is appropriate only if no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a); *accord Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 137–38, ¶ 7 (App. 2011).

**¶22** Nonetheless, a party opposing summary judgment may not simply rest on the pleadings, but must show by competent evidence specific facts that create a genuine issue for trial. *MacConnell v. Mitten*, 131 Ariz. 22, 25 (1981). We will not reverse summary judgment "simply on the speculation that some slight doubt (and few cases have complete certainty), some scintilla of evidence, or some dispute over irrelevant or immaterial facts might blossom into a real controversy in the midst of trial." *Orme Sch. v. Reeves*, 166 Ariz. 301, 311 (1990). Also, we may affirm summary judgment on any basis supported by the record. *Mutschler v. City of Phoenix*, 212 Ariz. 160, 162, ¶ 8 (App. 2006).

**¶23** Under Delaware law, to prove fraudulent inducement, Whitestar was required to show each of the following: (1) MedMen made a false representation regarding the Closing Shares, (2) MedMen knew of, or had a reckless indifference to, that alleged falsity, (3) MedMen intended to induce action by Whitestar based on the representation, (4) Whitestar reasonably relied on MedMen's alleged representation, and (5) Whitestar suffered an injury proximately caused by MedMen's alleged representation. *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

## B. Judge Martin's Summary Judgment Ruling

**¶24** Although Whitestar identifies various factual disputes between the parties, there were no disputed *material* facts precluding summary judgment. Whitestar did not present admissible evidence the Closing Shares issued to Whitestar's members were "encumbered" by MedMen with a 30-day re-legending requirement. Moreover, even assuming a 30-day re-legending requirement existed, Whitestar did not show it was enforced as to the MedMen shares or that Whitestar or its members were proximately harmed. Judge Martin's findings and conclusions fully addressed, and correctly resolved, the issues set before him in the motion for summary judgment, and they did so in a fashion that will allow any court in the future to understand the resolution. Based on the admissible evidence, Whitestar cannot show that a genuine dispute exists whether Whitestar can prove each of the elements of fraudulent inducement. We agree with Judge Martin's analysis, and because no useful purpose would be served by this court fully rehashing and analyzing his correct ruling, we adopt his analysis. *See State v. Pena*, 140 Ariz. 544, 544 (1984) (approving and adopting the "well[-]reasoned and correct" decision of the court below).

¶25 We separately address other arguments Whitestar makes on appeal.

### C. Alleged Preclusive Effect of Judge Viola's Ruling

¶26 Whitestar maintains that Judge Viola's ruling after the August 2020 preliminary injunction evidentiary hearing precluded Judge Martin from entering summary judgment. We disagree. *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 279–81 (App. 1993) ("[L]egal conclusions reached at the preliminary injunction phase of litigation do not constitute law of the case."). Judge Viola's ruling was a preliminary ruling made before the close of discovery, and because the context in which the parties presented their arguments changed substantially after discovery, that ruling did not preclude Judge Martin from granting summary judgment.[8]

### D. The Motion for Reconsideration

¶27 Whitestar moved for reconsideration on one ground—that Judge Martin cited the wrong document, Exhibit 4 to Whitestar's controverting statement of facts, rather than Exhibit 3, when he concluded Whitestar had not put forward any probative evidence of the 30-day "re-legending period" and concluded that "the blanket authorization letter on which Whitestar relies does not say this." Whitestar raises that same argument on appeal. Both Exhibit 3 and Exhibit 4 contain a blanket authorization letter from MedMen to Odyssey—one dated June 28 and one dated July 11, 2018—and neither letter provides for a 30-day (or otherwise specified) re-legending period. Moreover, although Whitestar is correct that Exhibit 3 also contains representation letters, including a "Form of Declaration of Reliance Upon Regulation S" that states that "[a]ny shares not so sold will be promptly returned to Odyssey for re-application of the restrictive legend," neither that document nor any other document in either exhibit specifies a re-legending period. The parties presented, and the superior court presumably considered, all these documents, and we find no error in its conclusion.

---

[8] We also disagree with any suggestion that the preliminary ruling of the superior court should be considered "evidence." *See, e.g.*, *Beam v. Foltz*, 832 F.2d 1401, 1408 (6th Cir. 1987) (noting with approval a jury instruction that "rulings by the court were not evidence and should not be considered as evidence").

## CONCLUSION

¶28        We affirm the superior court's summary judgment in favor of MedMen and against Whitestar.



AMY M. WOOD • Clerk of the Court
FILED:      TM